702 F.2d 400
 Fed. Sec. L. Rep. P 99,120
Fay M. KLINE, Plaintiff-Appellant,
v.
Emanuel L. WOLF, Jay N. Feldman, C. Ray Holloway, William V.
Lurie, Carl Prager, Julio Proietto, Jack M.
Sattinger and Price Waterhouse and Co.,
Defendants-Appellees.
Paul BLOCK, Plaintiff-Appellant,
v.
Emanuel L. WOLF, Jay M. Feldman, C. Ray Holloway, William V.
Lurie, Carl Prager, Julio Proietto, Jack M.
Sattinger and Price Waterhouse and Co.,
Defendants-Appellees.
 No. 593, Docket 82-7715.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 19, 1983.
Decided March 11, 1983.
As Amended April 8, 1983.
 
 Joseph Sternberg, New York City (Kass, Goodkind, Wechsler & Labaton, New York City, of counsel), for plaintiff-appellant Fay M. Kline.
 A. Arnold Gershon, New York City, for plaintiff-appellant Paul Block.
 Bartlett H. McGuire, New York City (Jamie Stern, Janet Neustaetter, Davis Polk & Wardwell, New York City, of counsel), for defendant-appellee Price Waterhouse and Co.
 Jacobs, Persinger & Parker, New York City, for defendants-appellees Emanuel L. Wolf, Jay N. Feldman, Jack M. Sattinger, Julio Proietto and William V. Lurie.
 Before LUMBARD, MANSFIELD and MESKILL, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 Fay Kline and Paul Block appeal from an order of the Southern District of New York, Edward Weinfeld, Judge, entered over their protests, granting final judgment in their favor on their claim of securities violations by Price Waterhouse & Co. ("Price Waterhouse") and several individual defendants but conditioning the judgment's effectiveness. The plaintiffs also appeal from the district court's denial of their two motions for class certification. We affirm the denial of those motions. Because the district court was without power to enter a judgment based upon a "settlement" to which the plaintiffs had not consented, however, we vacate the judgment and remand for further proceedings.
 
 
 2
 In September 1978, Allied Artists Industries, Inc. ("Allied") issued an annual report for the year ending March 31, 1978, certified by defendant Price Waterhouse, which allegedly contained materially false overoptimistic statements about Allied's prospects for future success. In April 1979 Allied filed a petition under Chapter 11 of the Bankruptcy Act. Plaintiffs Block and Kline purchased Allied stock in the summer and fall of 1978. In 1980 each filed suit under the Securities Exchange Act, 15 U.S.C. Secs. 78a, et seq., charging Price Waterhouse and several individual defendants with having issued false and misleading statements about Allied's financial condition to the investing public. The two suits were consolidated by the court.
 
 
 3
 Plaintiffs sought certification under F.R.Civ.P. 23 as representatives of a class of all purchasers of Allied stock from August 18, 1978, when the annual report was printed, until April 4, 1979, when Allied filed its petition in bankruptcy. The complaints rested on two alternative theories: first, that plaintiffs and the rest of the class had relied directly upon the allegedly misleading statements in the annual report, and second, that they had relied on "the integrity of the market price of Allied's stock," and that the defendants had compromised the integrity of the market by introducing materially false or misleading information about Allied to the public.
 
 
 4
 After defendants conducted considerable discovery of plaintiffs' case, Judge Weinfeld denied plaintiffs' motion for class certification. See 88 F.R.D. 696 (S.D.N.Y.1981). Plaintiff Block had testified with certainty at his deposition that he had purchased Allied stock in July 1978 on the basis of his reading of the fiscal 1978 annual report, when in fact the annual report was not printed until August 18, 1978, and was not mailed to stockholders until September 8 and 11, 1978. Plaintiff Kline had not purchased Allied stock as a result of her own investigation, but on the advice of her husband, William Kline. Mr. Kline in turn testified in a deposition that he had recommended Allied to his wife on the advice of his broker. The broker, however, denied ever making any statement to Mr. Kline about Allied's performance. In addition, Judge Weinfeld found that Mrs. Kline had refused to answer "critical and relevant questions" posed to her at her deposition.
 
 
 5
 On the basis of this and other testimony developed in discovery, Judge Weinfeld found that both plaintiffs were vulnerable to serious attacks upon their credibility, and were thus subject to unique defenses atypical of the class of purchasers of Allied stock during the relevant period, which could "divert attention from the substance of the basic claim" with the result that the "remaining members of the class could be severely damaged by plaintiffs' representation of them."
 
 
 6
 Defendants later tendered to each plaintiff the full amount of damages that each could individually recover after a trial, including interest to date and court costs. This settlement offer was conditioned, however, on the understanding that it was "without waiver of any defenses or making any admissions in respect of any matters alleged in the complaints." The district court found that the defendants made this offer to avoid the heavy litigation costs they would incur in continuing the present litigation. The plaintiffs rejected this offer, noting that were the case to proceed to trial and were they to prevail, their recovery would be on the merits and they would not be forced to accept the conditions imposed by defendants' settlement offer.
 
 
 7
 The district court then informed the parties that if the defendants deposited the tendered amount into court, the plaintiffs could collect their individual damages and the court would stay all proceedings in the case pending resolution of class certification motions in two similar actions in the Eastern District of Pennsylvania. The court adopted a proviso, similar to that proposed by the defendants, that this disposition of the case "in no respect shall constitute a waiver of any right or any defense which the defendants may have with respect to any other action instituted upon the same claim...." See 93 F.R.D. 128, 131 (S.D.N.Y.1982). The plaintiffs objected to this procedure, arguing that when a defendant proposes a settlement, the most he can do is "to put the plaintiff on the spot in either accepting or rejecting" the offer. The plaintiffs argued that if they were permitted to proceed with a trial on the merits of their individual claims they could erase any doubts about their credibility and establish their adequacy as representatives by winning a victory at trial. The district court disagreed, stating that it would proceed with the announced plan. The plaintiffs then orally renewed their motion for class certification, which the district court denied, finding that nothing had occurred to persuade it to alter its view that the plaintiffs were inadequate as class representatives. It then stayed all proceedings in the action pending disposition of the class certification motions in the similar cases in the Eastern District of Pennsylvania.
 
 
 8
 On June 2, 1982, class certification was denied in the two Pennsylvania cases. Both parties to the present action then submitted proposed forms of judgment. The plaintiffs' version stated that the judgment was "on the merits ... against all defendants." The defendants' version followed the form prescribed by the district court at the previous hearing. The court entered a judgment adopting the language proposed by defendants. The judgment provided that the plaintiffs could collect the full amount of money damages claimed, $7,357.16 plus accumulated interest for plaintiff Kline, and $15,134.19 plus accumulated interest for Block. However, it also provided that it did not "constitute a waiver of any rights or defenses defendants may assert in any pending or future action other than the individual claims of plaintiffs Fay M. Kline and Paul Block."
 
 DISCUSSION
 
 9
 * Class Certification Issues
 
 
 10
 Appellants contend that Judge Weinfeld erred in denying both their initial motion for class certification and their renewed motion after the court's decision to "accept" the defendants' settlement offer. They argue first that there was insufficient evidence to find that the plaintiffs' credibility was seriously in doubt. Although a court must be wary of a defendant's efforts to defeat representation of a class on grounds of inadequacy when the effect may be to eliminate any class representation, see Umbriac v. American Snacks, Inc., 388 F.Supp. 265, 275 (E.D.Pa.1975), Judge Weinfeld's findings were fully supported by evidence and his denial of representation was proper. Plaintiff Block testified that he had relied upon a report which he now admits did not exist at the time he allegedly relied upon it. Even if this testimony was the product of an innocent mistake, it subjects Block's credibility to serious question. Likewise, while the dispute between William Kline and his broker does not prove that Kline testified falsely, it does cast a shadow over Fay Kline's case. In conjunction with Mrs. Kline's refusal to answer proper discovery questions, there was an adequate basis for the district court to conclude that her representation of the class would be less than adequate. See Goldberg v. Taylor Wine Co., 27 Fed.R.Serv. 1298, 1300-02 (E.D.N.Y.1979), aff'd, 636 F.2d 1201 (2d Cir.1980) (credibility of plaintiff); Norman v. Arcs Equities Corp., 72 F.R.D. 502, 506 (S.D.N.Y.1976) (plaintiff's failure to comply with discovery rules); see also Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 549-50, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949) (class representative is a fiduciary, and interests of the class are "dependent upon his diligence, wisdom and integrity").
 
 
 11
 Plaintiffs next argue that the district court never resolved the issue of credibility, but simply made a preliminary determination that their credibility was vulnerable to attack. Nothing less than a finding that the plaintiffs testified falsely, they imply, could justify a conclusion that they would not be adequate class representatives. At this preliminary stage, however, the court cannot be expected to make a final determination before trial. A preliminary finding is sufficient.
 
 
 12
 Finally, appellants argue that their questionable testimony with respect to their reliance on the Allied annual report should not preclude their representation of the class since this testimony was irrelevant to their alternate claim, which is based on a "fraud on the market" theory. They point out that on the latter claim they would be entitled, regardless whether they relied on the annual report, to recover losses suffered as a result of their purchase of stock on the assumption that its market price fairly reflected its value when in fact that price had been artificially distorted by the introduction into the market of materially false and misleading information. See, e.g., Blackie v. Barrack, 524 F.2d 891, 906 (9th Cir.1975), cert. denied, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); Chris-Craft Industries v. Piper Aircraft Corp., 480 F.2d 341, 374 (2d Cir.), cert. denied, 414 U.S. 910, 94 S.Ct. 232, 38 L.Ed.2d 148 (1973); id. at 395, 399-400 (Mansfield, J., concurring and dissenting); Note, The Fraud-on-the-Market Theory, 95 Harv.L.Rev. 1143 (1982). We disagree. Since plaintiffs' testimony on an issue critical to one of their two causes of action was subject to sharp attack, the district court reasonably concluded that their credibility in general was sufficiently in doubt to justify denying them a fiduciary role as class representatives with respect to both claims. Moreover, even with respect to their "fraud on the market" claim their incredibility might support a rebuttal unavailable against many other class members, i.e., that plaintiffs did not significantly rely on the integrity of the market or that, even if they had known of the alleged misrepresentation, they would still have purchased the stock. See Wilson v. Comtech Telecommunications Corp., 648 F.2d 88, 92 (2d Cir.1981).
 
 
 13
 The district court also correctly held that plaintiffs' inadequacy as class representatives was not cured by defendants' settlement offer. The offer did not dissolve the fully justified doubts as to plaintiffs' credibility since it was made solely because the amounts at issue were too small to justify the anticipated high litigation costs that a full scale trial would require. Plaintiffs' characterization of this turn of events as a "victory on the merits" for them borders on the frivolous. The defendants never acknowledged liability even in the individual cases at hand, and were at pains to make clear that the judgment was to have no impact outside of the present cases.
 
 II
 Entry of Limited Judgment for Plaintiffs
 
 14
 When settlement negotiations between the plaintiffs and defendants in this case reached an impasse, the district court in effect implemented a "forced settlement" in the form of a judgment embodying a modified version of the defendants' final offer: the defendants would pay the plaintiffs all the money damages to which they claimed to be entitled in their individual suits but the judgment would be conditioned by a proviso that it was to have no stare decisis or collateral estoppel effect in other cases. This proviso, if upheld, would foreclose similarly-situated victims of the alleged fraud from attempting on the basis of collateral estoppel to use the judgment as prima facie proof of liability and thus to eliminate any need to introduce evidence themselves on that issue. See, e.g., Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The conditional nature of the judgment also would preclude the named plaintiffs from obtaining reconsideration of their adequacy as class representatives, to which they would have been entitled if they had established the defendants' liability after trial of the present case. See East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 406 n. 12, 97 S.Ct. 1891, 1898 n. 12, 52 (1977) (endorsing the right of plaintiff to have the court consider his class certification motion on the "full record" existing after plaintiff's prosecution of his individual claims).
 
 
 15
 Class certification carries with it economic consequences for the plaintiffs, quite aside from the possibility of substantial benefits to their counsel. Under the conditional judgment entered by the district court the plaintiffs would probably be forced to pay over most if not all of their recovery to their counsel for services and disbursements in the action. On the other hand, if they succeeded in obtaining a judgment against the defendants that led upon reconsideration to their certification as class representatives, the plaintiffs could eventually spread their litigation expenses across a class of victorious plaintiffs. See Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 333, 334 n. 6, 100 S.Ct. 1166, 1171, 1172 n. 6, 63 L.Ed.2d 427 (1980) (noting economic interest of plaintiff who has already been tendered full relief in class certification). The defendants are thus enabled by terminating an individual action through use of a conditional judgment to "pick off" individual plaintiffs who might otherwise expose the defendants eventually to class liability involving much larger amounts. As against these considerations there is the interest of the court in avoiding the waste of judicial resources that would occur if the plaintiffs failed to establish liability in their individual suit or, if successful in that suit, nevertheless failed upon reconsideration to obtain certification as class representatives.
 
 
 16
 A district court may terminate a case over a plaintiff's objections for a variety of reasons. It may dismiss a suit under F.R.Civ.P. 12(b)(6) if the plaintiff has failed to state a claim upon which relief can be granted, or under F.R.Civ.P. 56 if the undisputed facts indicate that the plaintiff is not entitled to relief. It may also terminate a suit in response to misconduct by the plaintiff, such as an unexcused failure to comply with a discovery order, see F.R.Civ.P. 37(b)(2)(C); Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062 (2d Cir.1979), or failure to prosecute his case, see F.R.Civ.P. 41(b); Chira v. Lockheed Aircraft Corp., 634 F.2d 664 (2d Cir.1980). However, the disposition of the case at hand was for none of these reasons. The plaintiffs' case, while evidently saddled with credibility problems, had never been tested by a motion to dismiss or a motion for summary judgment, nor were the plaintiffs found to have engaged in misconduct of any kind in the conduct of the case.
 
 
 17
 The only precedent we have found for the procedure employed by the district court in this case is the action of the district court in Roper v. Consurve, Inc. (S.D.Miss.), rev'd, 578 F.2d 1106 (5th Cir.1978), aff'd sub nom. Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). That court concluded that the named plaintiffs could not fairly and adequately protect the class because of the named plaintiffs' inability to finance the case. 578 F.2d at 1111. The district court then entered a final judgment over plaintiffs' objections after the defendant tendered to each named plaintiff the amount he claimed to be due, in the form of an "Offer of Defendants to Enter Judgment as by Consent and Without Waiver of Defenses or Admission of Liability." See Roper, 445 U.S. at 329, 100 S.Ct. at 1169 (discussing district court proceedings). The Fifth Circuit overturned the judgment, expressly disapproving the imposition of a forced settlement upon the plaintiffs. 578 F.2d at 1110; id. at 1116 (Thornberry, J., concurring). The Supreme Court affirmed the Fifth Circuit's decision, commenting on the district court's procedure as follows:
 
 
 18
 "[Defendant] has denied liability to the [plaintiffs], but tendered what they appear to regard as a 'nuisance settlement.' [Plaintiffs] have never accepted the tender or judgment as satisfaction of their substantive claims.... The judgment of the District Court accepting [defendant's] tender has now been set aside by the Court of Appeals. We need not speculate on the correctness of the action of the District Court in accepting the tender in the first instance, or on whether petitioner may now withdraw its tender." 445 U.S. at 337, 100 S.Ct. at 1173 (emphasis added).
 
 
 19
 Justice Rehnquist, who wrote a concurring opinion, commented in more detail on this procedure:
 
 
 20
 "[An] action is moot in the Art. III sense only if this Court adopts a rule that an individual seeking to proceed as a class representative is required to accept a tender of only his individual claims. So long as the court does not require such acceptance, the individual is required to prove his case and the requisite Art. III adversity continues. Acceptance need not be mandated under our precedent since the defendant has not offered all that has been requested in the complaint (i.e., relief for the class) and any other rule would give the defendant the practical power to make the denial of class certification questions unreviewable." Id. at 340, 341, 100 S.Ct. at 1175 (Rehnquist, J., concurring) (emphasis added).
 
 
 21
 We have no doubt that a court would be justified in directing the entry, with the defendant's consent, of a judgment which gave a plaintiff all the relief he had requested, see Roper, supra, 445 U.S. at 333, 100 S.Ct. at 1171; id. at 341, 100 S.Ct. at 1175 (Rehnquist, J., concurring), or in overruling truly trivial objections to a bona fide offer of such relief. However, a court may not impose upon a plaintiff a settlement that deprives him of relief to which he could be entitled after trial. See Curtiss-Wright Corp. v. Helfand, 687 F.2d 171, 175 (7th Cir.1982) (court cannot force settlement in civil case); General Mill Supply Co. v. SCA Services, Inc., 697 F.2d 704 (6th Cir.1982) (same). For instance, a court ordinarily may not order a remittitur with respect to a verdict in a plaintiff's favor without affording him the alternative of a new trial. Staplin v. Maritime Overseas Corp., 519 F.2d 969, 972-73 (2d Cir.1975); 6A J. Moore, Moore's Federal Practice p 59.08, at 59-199 (1982).
 
 
 22
 We recognize that the claims here may be so lacking in merit that they have but a slender chance of success at trial and that a trial might result in needless expense to the defendants and waste of judicial resources. In that event the district court and the defendants would be justified in invoking 28 U.S.C. Sec. 1927 to require plaintiffs' counsel personally to satisfy excess costs, expenses and any attorneys' fees reasonably incurred because plaintiffs' counsel had multiplied proceedings unreasonably and vexatiously in view of defendants' earlier offer to pay plaintiffs' entire individual damages. Moreover, a victory by plaintiffs on their individual claims after trial, while probative of their ability to represent a class of similar claimants, is not dispositive of that issue.[1] The court might still find that the differences between plaintiffs' individual claims and those of other members of the class rendered them inadequate as class representatives.
 
 
 23
 Nevertheless, we believe for these reasons that the plaintiffs should be free to prosecute their individual lawsuits, subject of course to possible dismissal on proper grounds and to the foregoing hazards. Nothing in our decision precludes a consensual settlement of the case by the parties.
 
 
 24
 The orders denying class certification are affirmed; the judgment is vacated and the case remanded to the district court for further proceedings consistent with this opinion.
 
 
 25
 Each party shall bear its own costs.
 
 
 
 [1]
 The case of Sirota v. Solitron Devices, 673 F.2d 566 (2d Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 86, 213, 74 L.Ed.2d 80 (1982), is not to the contrary. There the defendants challenged the plaintiff's claim to be a member of the class, after the plaintiff had led the class to victory at trial. The court held that the class need not be decertified at that point, noting that "the class's victory before the jury might be thought to rebut" any argument that the plaintiffs' representation of the class was inadequate. Id. at 572. Even if Sirota is read to hold that a victorious class plaintiff is by the fact of victory proven to be an adequate representative of the class, that logic would not apply when a plaintiff had merely won on an individual claim