**Robert D. COHEN, Plaintiff,**

v.

**Dominic A. LAITI, Winston Kock, Laventhol & Horwath, and Hadron, Inc., Defendants.**

No. CV 82–3990.

United States District Court, E.D. New York.

July 20, 1983.

Harvey Greenfield and Kaufman, Malchman & Kirby, P.C., New York City, for plaintiff.

Rosenman, Colin, Freund, Lewis & Cohen, New York City, for defendants Laventhol & Horwath; Gerald Walpin and Eric J. Wallach, New York City, of counsel.

Shea & Gould, New York City, for defendants Lairi & Hadron, Inc.

## MEMORANDUM & ORDER

PLATT, District Judge.

Plaintiff, Robert D. Cohen, has moved to certify the instant proceeding as a class action, pursuant to Fed.R.Civ.P. 23(b)(3). As a named plaintiff, Mr. Cohen must first demonstrate that his claims "are typical of the claims ... of the class," Fed.R.Civ.P. 23(a)(3), and that he will "fairly and adequately protect" its interests. Fed.R.Civ.P. 23(a)(4). We find that the facts of this case are closely analogous to the facts of *Kline v. Wolf,* 702 F.2d 400, 401 (2d Cir.1983), where the Second Circuit upheld Judge Edward Weinfeld's conclusion that the named plaintiffs' "credibility was sufficiently in doubt to justify denying them a fiduciary role as class representatives ...." *Id.* at 403. On the authority of *Kline,* we hold that Mr. Cohen's credibility and market reliance are open to attack, that his claims are subject to unique defenses, that he therefore does not meet the typicality requirement, and that, consequently, his motion for class certification must be denied.

This action arises under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.,* and Rule 10b–5. Plaintiff asserts that defendants, Hadron, Inc., Dominic A. Laiti, Winston Kock, and Laventhol & Horwath, submitted or caused to be submitted to the SEC false and misleading annual financial statements (i.e., 10–K reports) relating to Hadron for the fiscal years ending March 31, 1980 and March 31, 1981. During the relevant period, Mr. Laiti was an officer and director of Hadron, and Mr. Kock (now deceased), a director. Laventhol & Horwath is a public accounting firm that prepared and certified the financial statements in question.

In September, 1979, Hadron entered into a contract with a limited partnership known as Laser Associates. Laser was established by defendant Laiti, Earl W. Brian (Chairman of the Hadron Board of Directors until March 31, 1981), and a company controlled by Brian. Pursuant to that contract, Hadron received approximately $1.8 million over a two-year period to develop certain technological improvements in Laser's laser production tools. Initially, the improvements were owned by Laser and licensed to Hadron for a fee. Then, in September and October, 1981, Hadron acquired all of Laser's assets, including the technological improvements.

At the core of this lawsuit is the manner in which the $1.8 million paid by Laser was reflected in Hadron's fiscal 1980 and 1981 financial statements. Hadron included these payments as part of earned revenue and net income. Plaintiff contends that in reality they were loans from Laser to Hadron and that, if Hadron's statements had treated them as such, they would have revealed a net loss rather than a net gain.

Mr. Cohen purchased 500 shares of Hadron common stock, over the counter, on each of two dates: May 20, 1981 and June 12, 1981. In making these purchases, plaintiff purports to have relied on Hadron's 10–K reports for fiscal 1980 and 1981, on the advice of his broker, Jack Feiler, an account executive at Drexel Burnham Lambert, Inc., and on the assumption that the stock's market price fairly reflected its value (i.e., market integrity). The putative class consists of all similarly situated persons who bought Hadron common during the period between July 14, 1980, when Hadron's fiscal 1980 financial statement was publicly filed with the SEC, and December 30, 1981, when Hadron's December 10, 1981 8–K report (which revealed SEC objection to the manner in which Hadron had treated the Laser payments) was publicly filed with the SEC.

The issue presently confronting the Court, however, is not whether this lawsuit is meritorious, but whether Mr. Cohen would be an adequate class representative. The immediate dispute involves testimony taken March 8, 1983, during the deposition of Mr. Cohen, and April 7, 1983, during the deposition of Mr. Cohen's broker, Mr. Feiler. Defendants argue that the testimony regarding how plaintiff learned of Hadron and why he decided to purchase 1,000 shares of its stock is contradictory, and that this gives rise to defenses that could be interposed against Mr. Cohen but not against class members in general. Plaintiff attempts to minimize the testimonial discrepancies and suggests that mere passage of time (here, approximately two years) between the conversations in question and the depositions is bound to cause "difference[s]

in recollection ...." Letter of Irving Malchman (July 5, 1983).

We note at the outset that Mr. Cohen's credibility problems need not be firmly established. As this Circuit stated in *Kline v. Wolf:*

Plaintiffs ... argue that the district court never *resolved* the issue of credibility, but simply made a preliminary determination that their credibility was vulnerable to attack. Nothing less than a finding that the plaintiffs testified falsely, they imply, could justify a conclusion that they would not be adequate class representatives. At this preliminary stage, however, the court cannot be expected to make a final determination before trial. *A preliminary finding is sufficient.*

*Id.* at 403 (Emphasis added). In addition, although plaintiff attempts to state claims based upon reliance on Hadron's annual statements and upon so-called "fraud on the market" (incorrect belief that the market price of the Hadron stock fairly reflected its value), we need find that plaintiff's credibility suffers with regard to only one of these claims in order to conclude that he may not represent a class raising both of them. *Id.*

The contradictions between the allegations in the complaint and the testimony of Mr. Cohen, and between Mr. Cohen's and Mr. Feiler's respective testimony may not be glossed over. Without presenting an exhaustive list, we will point out the most significant disparities.

First of all, Mr. Cohen asserts in his complaint that he purchased the Hadron stock in partial reliance on Hadron's 10–K reports for fiscal years 1980 and 1981. However, he could not have relied on the fiscal 1981 10–K report, for it was not publicly filed with the SEC until July, 1981—approximately one month after his second and last 500-share purchase. As for the fiscal 1980 10–K report, plaintiff testified that he never saw it. Affidavit of Gerald Walpin (May 10, 1983), Exhibit C (Deposition of Robert

D. Cohen (March 8, 1983) [Cohen Dep.]) at 205.

Second, Mr. Cohen testified that Mr. Feiler, his broker, first brought Hadron to his attention (Cohen Dep. at 30, 133, 139–40) and that Mr. Feiler recommended that he purchase stock in the company. Cohen Dep. at 30–31, 228–29, 231–34. For example:

Q. Who first brought up the name of Hadron?

A. Mr. Fieler [sic] did.

Q. And what did he say to you?

A. He told me it was a good company, that he thought I might be interested in looking into the company.

Cohen Dep. at 30–31. Mr. Feiler, on the other hand, testified that, at best, he could not recall any discussions with Mr. Cohen concerning Hadron. Affidavit of Gerald Walpin (May 10, 1983), Exhibit D (Deposition of Jack Feiler (April 7, 1983) [Feiler Dep.]) at 69–70, 79–80. Mr. Feiler testified as follows:

Q. Now, do you have any recollection of talking[ to Mr. Cohen concerning Hadron prior to his giving you an order for Hadron?

A. No.

Q. Is it your best recollection that you did not speak with him in advance of placing the order—

A. Yes.

Q. (Continuing)—concerning Hadron?

A. Yes.

Q. To your recollection, did you recommend Hadron stock to any of your customers?

A. No.

Feiler Dep. at 70. Mr. Feiler's testimony is sufficient to cast considerable doubt upon Mr. Cohen's credibility.

Third, plaintiff testified that Mr. Feiler sent him materials concerning Hadron, which he reviewed prior to his stock purchase. Cohen Dep. at 30–31, 72, 139–40. Conversely, his broker did not recall having sent any Hadron materials to Mr. Cohen, and indeed the Drexel Burnham research library did not maintain a file on the company. Feiler Dep. at 72–73, 96–97; Affidavit of Gerald Walpin (May 10, 1983), Exhibit E (Deposition of Ronald Shindler (April 7, 1983)) at 4, 9, 14, 19.

We hold that these inconsistencies, standing alone, provide a sufficient basis for denial to the plaintiff of class representative status. *See Panzirer v. Wolf,* 663 F.2d 365, 368 (2d Cir.1981), *vacated as moot sub nom Price-Waterhouse v. Panzirer,* —— U.S. ——, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982); *Goldberg v. Taylor Wine Co.,* 27 Fed.R.Serv.2d (Callaghan) 1298, 1301 (E.D. N.Y.1979); *Weisman v. Darneille,* 78 F.R.D. 669 (S.D.N.Y.1978).

Plaintiff additionally argues that, because his complaint states (or attempts to state) a claim based upon fraud on the market, reliance is presumed and therefore it is irrelevant that he may not have acted on information supplied by his broker. *See Panzirer v. Wolf,* 663 F.2d at 368; *Schlanger v. Four-Phase Systems, Inc.,* 555 F.Supp. 535, 538 (S.D.N.Y.1982). However, this presumption is rebuttable if defendants "raise[ ] questions concerning the materiality to [the plaintiff] of the market's integrity and defendants' alleged misrepresentations." *Greenspan v. Brassler,* 78 F.R.D. 130, 132 (S.D.N.Y.1978) (footnote omitted). *See Panzirer v. Wolf, supra; Axelrod v. Cities Service Co.* [current binder] Fed.Sec. L.Rep. (CCH) ¶ 99,131 at 95,474 (S.D.N.Y. March 17, 1983); *Markewich v. Ersek,* 98 F.R.D. 9, 10–11 (S.D.N.Y.1982).

Here, plaintiff testified that he frequently speculated in inexpensive, lesser-known stocks with substantial growth potential, some of which were issued by corporations that had reported a net loss in the preceding year. Cohen Dep. at 41–46, 61–62, 110–11, 113–14, 116–17, 121–23, 125–27. Moreover, he stated that many investment decisions were based on tips supplied by friends and business associates, and that some of these involved inside information. Cohen Dep. at 114, 122–32, 242–43. Indeed, at one point, he testified that "it's an emotional decision at the time as far as whether I buy or not . . . ." Cohen Dep. at 113.

We hold that this testimony is sufficient, standing alone, to cast doubt upon plaintiff's reliance on the integrity of the market price of Hadron stock. Although we cannot say at this point that defendants have rebutted the presumption of reliance, it is clear that Mr. Cohen's investment strategy invites rebuttal and that the time likely to be consumed thereby is sufficient to justify our finding that this strategy gives rise to a unique defense requiring a denial of class representative status to Mr. Cohen.

Because plaintiff's credibility and reliance are both subject to "sharp attack," *Kline v. Wolf,* at 403, we conclude that it would be inappropriate to grant class action certification and hence deny plaintiff's motion therefor without prejudice to renew if plaintiff is able to locate and join additional class plaintiffs who would constitute appropriate class representatives.

SO ORDERED.