The ALAN GUTTMACHER INSTITUTE,
Plaintiff-Appellant,

Richard Udry, PH.D; Larry Bumpass,
Ph.D; Charles F. Westoff, Ph.D; John
G. Kantner, Ph.D; Ronald Freedman,
Ph.D; Samuel Preston, Ph.D, Plaintiffs,

v.

M. Peter McPHERSON, Administrator of
the Agency for International Develop-
ment (AID) and Director of the Inter-
national Development Cooperation
Agency; Jay Morris, Deputy Adminis-
trator for AID; Richard R. Miller, For-
mer Chairman of the Communications
Review Board for AID, and his succes-
sor in office; and Walter Rockwood,
Mary Beth Bloomberg, Dee Ann Smith,
Kate Semerad, Don Thieme, Doug Trus-
sell, and Beth Hogan, Members of the
Communications Review Board for
AID, and their successors in office;
George F. Shultz, Secretary of State;
David A. Stockman, Director of the Of-
fice of Management and Budget, De-
fendants-Appellees.

No. 1481, Docket 86–6075.

United States Court of Appeals,
Second Circuit.

Argued June 23, 1986.
Decided Nov. 17, 1986.

Janet Benshoof, American Civil Liberties Union, New York City (Rachael Pine, American Civil Liberties Union, New York City, Steven Shapiro, Madeline Kochen, New York Civil Liberties Union, New York City, William Josephson, Pam Jarvis, Fried, Frank, Harris Shriver & Kampelman, New York City, on the brief), for plaintiff-appellant.

Paula A. Sweeney, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., Jane E. Booth, Asst. U.S. Atty., on the brief), for defendants-appellees.

Before MANSFIELD, NEWMAN and CARDAMONE, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal from a judgment of the District Court for the Southern District of New York (Charles S. Haight, Jr., Judge) concerns a challenge to the denial of public funding by the Agency for International Development (AID) for the private publication of a scientific journal. Funding was denied partly because the journal included two articles that were construed by AID personnel as advocating abortion. The lawsuit ended with the entry of a judgment, consented to by the defendants, that requires reconsideration of the funding decision without regard to the two questioned articles and articles "like them." The plaintiff contends that the judgment is deficient because it fails to determine that the denial of funding constituted a violation of the First Amendment and because the plaintiff was denied leave to amend its complaint to include a challenge to the constitutionality of a provision of the Foreign Assistance Act. Though the judgment, and the circumstances leading to its entry, are somewhat unusual, we conclude that, with a slight modification, it should be affirmed.

## Background

Plaintiff-appellant, The Alan Guttmacher Institute, publishes *International Family Planning Perspectives* (*"Perspectives"*), a quarterly journal distributed in the United States and developing countries to a read-

ership of more than 23,000 professionals in the field of international population and family planning. The Institute has received funding for publication of *Perspectives* from AID pursuant to the Foreign Assistance Act (FAA), 22 U.S.C. § 2151 *et seq.* (1982). In 1982 the Institute applied to AID for 1983 funding. The grant application was considered by AID's Communications Review Board (CRB), after approval had been recommended by AID's Office of Population. The CRB denied the grant application for several reasons, including "exorbitant" publication costs, the fact that less than half the countries in which *Perspectives* is distributed are recipients of United States foreign aid, and the fact that an estimated 50% of the magazines' intended audience cannot read *Perspectives,* which is published only in English.

The statement of reasons for denying the grant also included a ground that has given rise to this litigation—the inclusion of articles that the CRB viewed as "more than subtle attempts to proselytize on the merits of legalizing abortions in [less developed countries]." Ultimately, two articles were identified. One, entitled "Blame Illegal Abortion for 26% of Pregnancy Mortality in Bangladesh," is a digest of a study of pregnancy-related deaths in that country. The article reports a maternal death rate of 3.4 per 100,000 women and an abortion mortality rate of 1.9 per 100,000 women. It also reports that eight of ten abortion-related deaths could have been prevented if medically approved procedures had been used. The other, entitled "The Delivery and Use of Contraceptive Services in Rural Tunisia," reports that abortion in the first trimester was legalized in that country in 1973. There is no other mention of abortion in the article.

AID's Bureau of Science and Technology appealed the CRB funding decision to AID's director, M. Peter McPherson. The matter of funding *Perspectives* attracted political interest, with at least one Senator and one Congressman writing McPherson to urge denial of the grant application. McPherson upheld the CRB's denial, and the Institute brought this suit.

The complaint alleged five causes of action. First, the Institute contended that the denial of funding violated the First Amendment because it was based on pro-abortion views expressed by the Institute elsewhere than in *Perspectives.* Second, and central to this appeal, the denial was alleged to violate the First and Fifth Amendments because AID's decision was motivated by the accurate reporting of information in *Perspectives.* Third, the denial was alleged to violate the FAA, which the Institute contended affirmatively permitted funding the publication of articles that contained information about the use and incidence of abortion and that were neutral, *i.e.,* neither favored nor opposed abortion. Fourth, the denial was alleged to violate the Due Process Clause because the decision not to renew funding was not preceded by a hearing. Fifth, the denial was alleged to be arbitrary agency action in violation of the Administrative Procedure Act (APA).

In his first encounter with the Institute's claims, Judge Haight dismissed the fourth cause of action for lack of a protected property interest and dismissed the fifth cause of action on the ground that AID's funding decisions are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and therefore not subject to judicial review under the APA. 597 F.Supp. 1530, 1534–37 (S.D.N.Y.1984). The District Judge also dismissed the claims of the individual plaintiffs (several scientists in the field of population research) and dismissed the Secretary of State as a defendant. Judge Haight upheld the Government's contention that sovereign immunity barred the Institute from securing affirmative injunctive relief, as distinguished from relief that would require AID to reconsider the funding decision without regard to allegedly unlawful considerations. This ruling, though not striking any particular provisions of the prayer for relief, presumably rejected that portion of the prayer seeking an order reconstituting the CRB. Also with respect to relief, the District Court rejected the Government's contention that

the suit sought money in excess of $10,000 and was within the exclusive jurisdiction of the Claims Court under the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491 (1982). Judge Haight understood the complaint to seek money "through administrative procedures so long as those procedures are lawful," 597 F.Supp. at 1543, and to request the court to order AID to make a grant award "only if fair and lawful consideration of the funding request proves impossible to secure." *Id.* Since a court order directing an award of money was not the "primary objective" of the plaintiff's suit, Judge Haight determined that the suit was not within the exclusive jurisdiction of the Claims Court. *See B.K. Instrument, Inc. v. United States,* 715 F.2d 713, 727 (2d Cir.1983). Finally, the District Judge rejected the Government's contention that the suit was moot because the grant year had ended.

Thereafter, the Government informed the District Court of AID's willingness to reconsider the Institute's grant application without giving any consideration either to any of the Institute's activities other than the publication of *Perspectives* or to the two articles that had been initially viewed by the CRB as advocating abortion. In light of this concession, the Government renewed its motion to dismiss.

In his second ruling, 616 F.Supp. 195 (S.D.N.Y.1985), Judge Haight first considered whether AID's offer mooted the Institute's first and second causes of action. He properly noted that voluntary cessation by a defendant of challenged conduct alleged to be unlawful will not moot a lawsuit unless " 'there is no reasonable expectation that the wrong will be repeated.' " *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953) (quoting *United States v. Aluminum Co. of America,* 148 F.2d 416, 448 (2d Cir.1945)). Then, without any explicit consideration of whether it was reasonable to expect AID to repeat the wrong alleged in the first cause of action—denial of funding because of views expressed other than in *Perspectives,* Judge Haight con-

cluded that AID's changed position mooted this cause of action.

Turning to the second cause of action—denial of funding because of the two articles in *Perspectives* mentioning abortion, Judge Haight concluded that AID's offer, as initially made, did not moot this claim. Reconsideration of the grant application without regard to the two questioned articles was deemed inadequate. "Plainly if defendants could moot a challenge to their alleged policy [of inhibiting publication of pro-abortion articles] simply by agreeing to ignore whatever articles they relied on previously, they could apply the policy endlessly on the basis of new articles, yet perennially avoid a decision on its legality." 616 F.Supp. at 200. Judge Haight then suggested how the AID offer could be broadened to moot the second cause of action. AID would have to reconsider the grant application without consideration of *Perspective's* inclusion of "neutral" articles on abortion and would have to concede that the two questioned articles were "neutral" on abortion, *id.* at 206; reconsideration would have to disregard these two articles and other articles "like them," *id.*

Judge Haight then considered whether the second cause of action stated a claim on which relief could be granted. In a thoughtful analysis, he identified the two contending principles pertinent to the Institute's claim. On the one hand, the Government may fix the terms on which it distributes money, and, in some circumstances, may set conditions that restrict activity protected by the First Amendment. *See Oklahoma v. United States Civil Service Commission,* 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794 (1947) (upholding constitutionality of Hatch Act). On the other hand, in many circumstances, the Government may not penalize the exercise of First Amendment rights by denying benefits, even though the claimant has no right to the benefit. *See Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (non-tenured teacher may not be denied employment for free speech activity). Judge Haight sought to harmonize these competing principles by insisting on ad-

vance notice of categories of expression that would result in denial of funding. In his view, denial of funding would pass constitutional muster only if the funder announced in advance the restrictions on speech on which it proposed to condition receipt of public funds. Such advance notice would afford grant applicants an opportunity to comply with the restriction or challenge it judicially, rather than be penalized after the fact for expression of views they thought could be aired without adverse consequence. Applying this approach to the Institute's claim, Judge Haight ruled that no current AID regulation conditions subsidies on refraining from publication of neutral articles on abortion. If Judge Haight's constitutional analysis is correct (a matter we do not decide) and if the two questioned articles are neutral on abortion, this ruling would appear to render unconstitutional the denial of the Institute's funding for expression of views not proscribed in advance. However, since the District Judge was considering only a motion to dismiss rather than the ultimate merits of the claim, he went no further than to rule that the Institute's claim survived the Government's motion to dismiss.

The District Judge then considered the sufficiency of the third cause of action—the claim that denial of funding because of publishing neutral articles on abortion violates the Foreign Assistance Act. He noted that section 104(f) of the FAA prohibits the use of FAA funds "to motivate or coerce" the practice of abortion or for abortion-related biomedical research, 22 U.S.C. § 2151b(f)(1), (3), but determined that the FAA contains no language expressly either precluding or authorizing publication of neutral information about abortion. Recognizing the inherently discretionary nature of the decision to commit limited funds to a variety of competing interests, Judge Haight concluded that nothing in the FAA barred AID from deciding not to fund publication of neutral information about abortion. He therefore dismissed the third cause of action.

Finally, the District Judge considered the Institute's motion to amend its complaint to add two new causes of action that would challenge the constitutionality of section 104(f)(1) of the FAA, 22 U.S.C. § 2151b(f)(1). The proposed amendment was stimulated by AID's announcement on July 13, 1984, of a new policy expanding upon the statutory prohibition against funding that would motivate or coerce abortions. The new policy announces, among other things, that the United States will not contribute to non-governmental organizations that "actively promote abortions as a method of family planning in other nations." *See* 616 F.Supp. at 209. The Institute alleged that AID has implemented this policy by inserting into AID grants a clause committing the grantee not to distribute AID funds in violation of the policy statement. The Institute further alleged that it apprehends "on information and belief" that AID will insert such a clause into any new grant to the Institute for *Perspectives*. This prospect, it was alleged, would oblige the Institute to sacrifice the exercise of its rights in order to apply for funding. The proposed amendment to the complaint would have added one cause of action challenging section 104(f)(1), as the source of the new policy, on the ground that it is vague and overbroad and a second cause of action challenging this section as applied because it has been used to justify content-based restrictions on speech.

Judge Haight denied the motion to amend on the ground that any claims the Institute might have to challenge the new policy and its statutory authorization were premature. He pointed out that neither the Institute nor *Perspectives* claims to "promote" abortions and that AID has taken no steps to deny funds to any domestic organization on the ground of promoting abortions. AID's only implementation of the new policy has been limited to inserting into grant contracts clauses that forbid using AID funds for foreign non-governmental entities that undertake propagandizing activities regarding abortion. Finding no indication that the new policy extends to publication of neutral information on abortion or has been applied to any domestic

non-governmental organizations, Judge Haight ruled that the plaintiff had shown no danger of direct injury from the new policy and therefore could not add causes of action that would be legally insufficient for this reason.

Thereafter, the Government informed Judge Haight that AID was willing to broaden its previous offer and agree to reconsider the grant application for *Perspectives* without regard not only to the two questioned articles but also to any articles like them, *i.e.*, neutral on abortion. In an unpublished opinion filed August 2, 1985, Judge Haight determined that AID's initial proposal, as thus broadened, accorded the Institute "the full relief available to plaintiff in this action." The District Judge rejected the Institute's contention that it was entitled to a declaration that any future attempt by AID to deny funding on the basis of articles neutral on abortion, even if done pursuant to a prospective regulation, would be unconstitutional. His reason for not entertaining a request for such a declaration is not entirely clear. Judge Haight pointed out that on the assumption that the defendants acted as alleged, *i.e.*, denied funding partly on the basis of articles neutral on abortion, this action "violated the First Amendment" in the absence of a prospective regulation defining categories of impermissible expression. He then noted that no such regulation had been promulgated and that any issue of the validity of such a regulation was thus speculative. This explanation makes clear why no declaration was issued with respect to a denial of funding undertaken pursuant to a regulation barring even neutral statements about abortion, but it leaves unclear why plaintiff did not receive a declaration that future denials based on neutral articles in the absence of such a regulation would be unconstitutional. The August 2, 1985, opinion also stated, without amplification, that the defendants' willingness to consent to a judgment granting the plaintiff the full relief available would moot the plaintiff's lawsuit.

A judgment embodying the Government's concessions was entered on April 2, 1986. Implementing the District Court's prior rulings, it dismissed the Institute's third, fourth, and fifth causes of action and denied leave to amend to add new causes of action challenging the constitutionality of the Foreign Assistance Act. With respect to the first and second causes of action, the judgment grants the following relief. AID is ordered to reconsider the Institute's application without consideration of the Institute's exercise of First Amendment rights in any forum outside of *Perspectives*. AID is also ordered not to deny the Institute's application on the basis of the two questioned articles "or on the basis of articles like them, *i.e.*, articles that are neutral on abortion." The judgment also declares that the two questioned articles and articles "like them" are not forbidden by present AID regulations. Finally, the judgment provides that in view of the defendants' agreement to the relief set forth in the judgment, the first and second causes of action are dismissed as moot.

From this judgment the Institute appeals, raising two claims. First, it contends that the District Court erred in dismissing the second cause of action because the Institute has not received and is entitled to an adjudication of its contention that the denial of funding on the basis of articles neutral on abortion violates its First Amendment rights. Second, it contends that it was improperly denied leave to amend its complaint.

### Discussion

At the outset, we note the unusual nature of this judgment. Normally, litigation that is not settled and withdrawn ends with either a consent judgment, an adjudicated judgment, or a judgment dismissing the complaint as moot. A consent judgment is agreed to by all parties and orders relief; it may, but frequently does not, adjudicate whether any rights have been violated, *Janus Films, Inc. v. Miller*, 801 F.2d 578, 582 (2d Cir.1986). An adjudicated judgment determines whether any rights have been violated, and if so, orders appropriate relief. *Id.* A judgment of dismissal for

mootness determines only that the controversy between the parties has become moot. The judgment in the pending case straddles both the line between consent judgments and adjudicated judgments and the line between live controversies and moot controversies. The judgment is not a consent judgment, since the plaintiff has not consented to it. But it is not a traditional adjudicated judgment, since it orders relief but makes no determination that the defendant has violated any of the plaintiff's rights. Moreover, the judgment dismisses two causes of action as moot while simultaneously ordering much of the relief sought on the basis of those causes of action.

The first aspect—ordering relief without determining any denial of rights—is unusual but not necessarily improper. We have previously observed that "a court would be justified in directing the entry, with the defendant's consent, of a judgment which gave a plaintiff all the relief he had requested," *Kline v. Wolf,* 702 F.2d 400, 405 (2d Cir.1983) (citation omitted), though "a court may not impose upon a plaintiff a settlement that deprives him of relief to which he would be entitled after trial," *id.* (citations omitted). In this case the Institute surely did not receive all the relief it requested, but whether it failed to achieve any relief to which it was entitled remains to be considered.

The second aspect of the judgment—ordering relief and dismissing on grounds of mootness—is more problematic. It is true that "a case or controversy is mooted in the Art. III sense upon payment and satisfaction of a final, unappealable judgment," *Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 333, 100 S.Ct. 1166, 1171, 63 L.Ed.2d 427 (1980), but in this case the judgment, when entered, had not been satisfied. Moreover, if this case were really moot, it would normally be our obligation to remand with directions to vacate the judgment and dismiss the complaint. *See United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950). At least that would be our "duty," *Duke Power Co. v. Greenwood County,* 299 U.S. 259, 267, 57 S.Ct. 202, 205, 81 L.Ed. 178 (1936), if circumstances occurring while the case was on appeal had mooted the controversy. We fail to understand how a controversy can be sufficiently alive to warrant a district court to enter a judgment granting relief and then become moot the instant the judgment is entered. Indeed, the Government, though insisting that the judgment properly dismissed the first and second causes of action as moot, defends the judgment on its merits, rather than urging us to dismiss the appeal because the controversy is moot.

■ If the defendants had voluntarily ceased the action complained either by funding the publication of *Perspectives* or by reconsidering the Institute's grant application without regard to the considerations alleged to be improper, and if there was no reasonable possibility that the challenged action would be repeated, the controversy would have become moot. But the defendants did not undertake such remedial steps before a judgment entered, and, more important, there was no determination that the challenged action was unlikely to recur. Instead, a judgment entered ordering the defendants to take remedial steps. The entry of that judgment, remedying the grievance alleged in the first two causes of action, may have accorded the plaintiff sufficient relief, but it did not render those causes of action moot. On the contrary, it adjudicated, if not all of the merits of the dispute, at least the plaintiff's entitlement to relief. It was error, after granting such relief, to dismiss the first two causes of action as moot.

Whether the judgment is deficient for not adjudicating the Institute's claim that its First Amendment rights were violated is the heart of the matter. The Institute contends that without such an adjudication, it has accomplished nothing in this litigation and remains inhibited in its expression of views for fear that its neutral expression of views on abortion will be deemed by AID to be grounds for denial of future grant applications.

■ We think the Institute takes an unduly narrow view of the judgment that has been entered. First, the judgment determines that the two questioned articles are neutral on abortion and are not abortion advocacy, as some members of the CRB apparently believed. Second, the judgment determines that no present AID regulations prohibit funding because of publication of articles that are neutral on abortion. Third, the judgment obliges AID to reconsider the Institute's grant application without regard to the two questioned articles or articles like them, *i.e.*, neutral on abortion. The reconsideration that has been ordered would be no more favorable to the Institute if the judgment had determined that AID's prior consideration of the questioned articles had violated the First Amendment. The realistic effect of the judgment is to provide the Institute assurance that the publication of articles neutral on abortion may not be used by AID as the basis for denial of funding *Perspectives*, at least until the promulgation of a regulation announcing that such publication will result in denial of future funding. As the Government explicitly acknowledges, "AID has conceded that such neutral articles will not be a basis for denying such future applications and are not in any way forbidden by AID's present regulations." Brief for Appellee at 36 (footnote omitted). Having secured a judgment requiring reconsideration of the grant application without regard to the two articles or other articles like them, the Institute has no entitlement to a declaratory judgment that the prior consideration of the two articles violated the First Amendment. A declaratory judgment is a discretionary remedy, *Green v. Mansour*, —— U.S. ——, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985), and need not be included in a judgment that grants relief remedying the grievance complained of. The District Court's exercise of discretion not to adjudicate the First Amendment issue was especially appropriate in view of the normal caution against adjudicating constitutional issues not necessary to the disposition of a case.

In its reply brief the Institute contends that the withholding of an adjudication of its First Amendment claim has denied it an opportunity to have the District Court adjudicate its right to receive the funds for which it applied. Relying on *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 47 (1977), the Institute argues that if AID had been adjudicated to have violated the First Amendment, AID would have had the burden of persuading the District Court that it would have denied the grant on other permissible grounds. If AID failed to sustain that burden, the argument continues, the District Court would have been required to direct AID to fund *Perspectives*.

■ This argument encounters two obstacles. First, it misapplies *Mt. Healthy*. That decision established the procedure for lawsuits challenging adverse employment action taken on the basis of dual motivation. If the employee proves that the employer was motivated both by an impermissible ground, such as racial discrimination, in addition to a legitimate ground, such as inadequate job performance, the burden is placed on the employer to establish that it would have taken the adverse employment action if the permissible ground alone had existed. If the employer cannot sustain that burden, the employee prevails. The *Mt. Healthy* procedure does not apply to agency decisions that require an exercise of discretion based on consideration of a wide variety of factors. When decisions of that sort are challenged on the ground that the agency included one impermissible factor among the many that were considered, the traditional remedy is reconsideration by the agency without regard to the impermissible factor. *See, e.g., SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943). An agency decision whether to grant limited funds to one of several competing applicants is precisely the type of discretionary decision for which the appropriate remedy, in the event of partial reliance on an impermissible factor, is reconsideration without regard to that

factor. *Mt. Healthy* is inapplicable to this case.

■ Second, even if *Mt. Healthy* applied to this case, any claim by the Institute that the District Court should order AID to approve the grant application and fund *Perspectives* (as distinguished from ordering reconsideration of the application) would encounter the jurisdictional bar of the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491, reserving to the Claims Court non-tort suits against the United States seeking more than $10,000. In this case, Judge Haight properly rejected the Government's Tucker Act defense because he construed the complaint to be seeking an order requiring lawful agency consideration of the Institute's application, rather than a direct award of funds. *Cf. Chemung County v. Dole,* 781 F.2d 963, 970 (2d Cir.1986); *B.K. Instrument, Inc. v. United States, supra,* 715 F.2d at 727–28. If the Institute were entitled to a court order directing payment of funds, it would have to seek such an order from the Claims Court.

For all of these reasons, the District Court did not err in declining to adjudicate whether the adverse funding decision denied the Institute its First Amendment rights.

■ Finally, the District Judge did not err in denying the Institute's motion to amend its complaint to challenge the constitutionality of the FAA's prohibition on use of public funds "to motivate" the practice of abortion. The Institute makes no claim that it engages in such activity. Moreover, as Judge Haight pointed out, there is no imminent threat that the new policy concerning channeling of AID funds from grantees to non-governmental entities that actively promote abortions has been applied or threatened to be applied to the Institute or to any domestic organizations.

Accordingly, we grant only the limited relief of modifying the judgment to delete paragraph 9, which states that the first and second causes of action are moot, and the judgment, as modified, is affirmed.

MANSFIELD, Circuit Judge (dissenting):

I respectfully dissent. In my view the admittedly unusual judgment based on the government's reluctant concessions, entered without either a trial or the plaintiff's consent, does not give the plaintiff the full relief to which it would be entitled if it prevailed upon a trial of the case.

In substance the plaintiff's allegations, which must be accepted as true for present purposes, are that (1) AID's policy is to refuse funding of non-perjorative or "neutral" articles presenting facts about abortion that might lead some to look upon it favorably, even though such articles are in compliance with 41 C.F.R. 7–7.5003–3,[1] but to favor granting funding to journals which publish articles on the "adverse" consequences of abortion; (2) AID has had a "discriminatory animus" toward the Guttmacher Institute and acted on the basis of an "impermissible motive" in denying a grant to *Perspectives;* and (3) AID is so thoroughly under the thumb of conservative members of Congress and the Administration that it is inherently unable fairly to evaluate *Perspectives* on the merits. For instance, Par. 17A of the Amended Complaint alleges that it was the policy of the

---

**1.** Title 41 C.F.R. § 7–7.5003–3 provides in pertinent part:

"(b) **Prohibition on Abortion-related Activities.** (1) No funds made available under this Contract shall be used to finance, support, or be attributed to the following activities: (i) Procurement or distribution of equipment intended to be used for the purposes of inducing abortions as a method of family planning; (ii) special fees or incentives to women to coerce or motivate them to have abortions; (iii) payments to persons to perform abortions or to solicit persons to undergo abortions; (iv) information, education, training, or communication programs that seek to promote abortion as a method of family planning; (v) any biomedical research which relates, in whole or in part, to methods of, or the performance of, abortions or involuntary sterilization as a means of family planning (epidemiologic or descriptive research to assess the incidence, extent or consequences of abortion is not precluded); or (vi) lobbying for abortion."

Communication Review Board ("CRB") to "prevent publication of accurate information concerning the ... consequences of abortion because, when such information puts legal abortion in a favorable light it undermines 'Administration goals and priorities', which are to promote the belief that abortion is wrong."

It is further alleged that AID's policy was expressed in its "Policy Paper" entitled "Population Assistance" which stated that AID discontinued funding of research on methods of abortion in 1981 "although A.I.D. continues to gather descriptive epidemological data to assess the incidence, extent or *adverse* consequences of abortion" (emphasis added). The Institute provided the court with a copy of the memorandum produced by the CRB purporting to justify its decision not to fund *Perspectives*, in which the CRB quoted the above passage from the AID Policy Paper and stated that the Institute had gone "beyond these parameters." The Institute also claimed that CRB had denied funds to more journals in the abortion and family planning field than in other fields because of AID's policy on abortion.

In essence, therefore, the Institute maintains that, even though the defendants agree to the terms of the judgment entered on April 2, 1985 by Judge Haight, they will not, absent further judicial protection of the Institute, be able to depart from their basic policy of denying grants to all publications containing the same or similar neutral or non-perjorative speech which the Institute is permitted by the judgment to use. The result will be that the defendants, rather than judge fairly the Institute's applications containing such speech, will resort to other grounds as the basis for denying it grants to which it is entitled.

These charges find some support in the present record. Senator Jesse Helms, for instance, wrote a letter dated February 1, 1983, to M. Peter McPherson, Administrator of AID, stating that he and McPherson had recently conferred regarding the AID Review Board's decision not to fund the Institute's *Perspectives'* application and putting pressure on McPherson to resist the efforts of "the population control lobby" to reverse the decision. Following this conversation and letter, McPherson upheld the CRB's decision.

Under the circumstances I do not believe that the Institute should be precluded from obtaining broader relief than that consented to, which it may be found entitled to after a trial. Such relief could be a direction that, in addition to the requirements of the consent judgment, AID agree that its basic policy with respect to neutral or non-perjorative articles is unlawful as violative of the Constitution, and that it will establish a new review board that will consist of members who do not subscribe to that policy in passing upon applications to AID for grants. Such measures may well be justified as a means of insuring that justice will not be tainted in this case by tactics of the sort apparently used by Congressmen such as Senator Helms to subject the AID Administrator to undue pressure in the performance of his duties toward the Institute.