**Frank SAVINO, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**COMPUTER CREDIT, INC., Defendant.**

No. CV 95–4446 (ADS).

United States District Court, E.D. New York.

June 7, 1997.

348

Law Offices of Scott N. Gelfand, New York City, for Plaintiff.

Robert L. Dougherty, Garden City, NY, for Defendant.

SPATT, District Judge.

This action arises from the claims of the plaintiff, Frank Savino ("Savino" or the "plaintiff"), on behalf of putative class, that the defendant, Computer Credit, Inc. ("CCI" or the "defendant"), has acted in violation of the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. § 1692, et seq., in its capacity as a collection agency, by mailing letters which contain language contrary to the statute's requirements. According to Savino, CCI has mailed these unlawful letters to 300,000 people within New York State. Presently before the Court is the plaintiff's motion for class certification.

## I. *Background*

The plaintiff is a resident of Hauppauge, New York. The defendant is a debt collection agency with its principal place of business in Winston–Salem, North Carolina. According to the original complaint, dated October 22, 1995, the plaintiff received a letter from the defendant dated August 28, 1995, the purpose of which was to collect an alleged debt of $153.00 owed to North Shore Hospital. In this pleading Savino alleged that this August 28, 1995 letter was the "*first* and only letter" that he received with respect to the debt. Compl. ¶ 8 (emphasis in original). The complaint continued by claiming that this letter failed to advise the plaintiff of "his right to validate and dispute the alleged debt" within 30 days and that CCI applied "false, deceptive and misleading means in connection with the collection" of the alleged debt, all in violation of the FDCPA. Compl. ¶¶ 9, 10. In addition, Savino asserts that he is acting

on behalf of a class of similarly situated consumers whose rights have been violated.

By notice of motion dated August 12, 1996, the plaintiff moved for leave to file an amended complaint. According to the moving papers, after this action was commenced, plaintiff's counsel was advised that his client had been sent a prior letter by CCI dated August 14, 1995 with regard to the aforementioned debt. Based on this representation, and the recently issued decision from the Second Circuit, *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir.1996), the plaintiff decided that it would be appropriate to file an amended complaint. Initially Savino attempted to obtain the defendant's consent to file the amended pleading. CCI refused. Accordingly, the plaintiff filed the appropriate motion pursuant to Fed.R.Civ.P. 15(a).

The only substantive difference between the original and proposed amended complaint was that in addition to asserting that the August 28, 1995 letter was the first correspondence received, Savino alleged that, "[u]pon information and belief, CCI mailed an earlier letter to Savino, dated August 14, 1995, which was the first communication by CCI·to Savino, or at least, CCI's first letter to Savino." Am. Compl. ¶ 10. The proposed amended complaint continued by claiming that while this letter did contain the required 30 day debt validation notice, it nevertheless violated the FDCPA "by containing language that overshadows, contradicts or is otherwise inconsistent with Savino's right to a 30 day statutory period in which to validate and [sic] dispute the alleged debt...." Am. Compl. ¶ 11.

By order dated September 18, 1996, this Court referred the motion for leave to file an amended complaint to United States Magistrate Judge Arlene R. Lindsay to render a decision. A report and recommendation would be necessary only if the decision was dispositive as to any claim or issue in the action.

By memorandum order dated November 7, 1996, Judge Lindsay granted the plaintiff's motion and the proposed amended complaint was deemed filed. The defendant did not file any objections to this order. On November 13, 1996, at a conference before Judge Lind-

say, the plaintiff discontinued his claim based on the August 28, 1995 letter.

On February 20, 1997 at his deposition, Savino admitted that he received the August 14, 1995 letter. The following day, the plaintiff moved for leave to file a second amended complaint deleting the initial denial that he never received the August 14, 1995 letter, alleging instead that he "received a letter from the Defendant dated August 14, 1995 for the purpose of collecting an alleged debt of $153.00 incurred by Savino with North Shore Hospital. This was the *first* letter Plaintiff Savino received from the Defendant with respect to the alleged debt." Sec. Am. Compl. ¶ 7 (emphasis in original). The second amended complaint does not contain any reference to the August 28, 1995 letter, instead alleging that the August 14, 1995 letter violated his rights pursuant to the FDCPA.

By order dated February 21, 1997, Judge Lindsay granted the plaintiff's motion for leave to file the second amended complaint. CCI filed its objections on March 7, 1997. On March 26, 1997, the defendant's motion and plaintiff's cross motion for partial summary judgment or in the alternative for a stay of the defendant's motion were filed.

By Memorandum of Decision and Order dated April 11, 1997, this Court affirmed Judge Lindsay's order granting the plaintiff's motion to file a second amended complaint, denied the defendant's motion for summary judgment and granted the plaintiff's motion for partial summary judgment as to liability. In reaching this conclusion, the Court determined that the August 14, 1995 letter sent·to the plaintiff "insist[ing] on immediate payment" "overshadowed or contradicted" the mandatory 30 day debt validation notice which requires that consumers be advised that they have 30 days within which to contest the alleged obligation, in violation of Second Circuit case law. *See Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir.1996) (setting forth the applicable standard). On May 8, 1997, CCI filed a notice of appeal of the Court's decision and order.

Presently before the Court is the plaintiff's motion for class certification pursuant to

Fed.R.Civ.P. 23. The proposed class is composed of:

> All persons with addresses in New York State to whom CCI sent a communication in the form of the August 14, 1995 letter sent to Class Plaintiff Frank Savino in an attempt to collect a debt incurred for person, family or household purposes, as reflected by Defendant's records, on or after August 14, 1995.

## II. *Discussion*

### A. *The notice of appeal*

At the outset, the Court must address the fact that on May 8, 1997, the defendant filed a notice of appeal with respect to the Court's April 11, 1997 decision denying CCI's motion for summary judgment and granting Savino's motion for partial summary judgment with respect to liability. Recently, in the case of *United States v. Rodgers,* 101 F.3d 247 (2d Cir.1996), the Second Circuit recognized that in general:

> the jurisdiction of the federal courts of appeals is limited to appeals from final decisions of the district courts. 28 U.S.C. § 1291. Final decisions are those that end the litigation on the merits, leaving nothing for the court to do but execute the judgment. *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989)....

As a general matter, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982). A district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals. *United States v. Rivera,* 844 F.2d 916, 921 (2d Cir.1988) ("Simply put, jurisdiction follows the mandate.").

The divestiture of jurisdiction rule is, however, not a per se rule. It is a judicially crafted rule rooted in the interest of judicial economy, designed "to avoid confusion or waste of time resulting from having the same issues before two courts at the same time." *United States v. Salerno,* 868 F.2d 524, 540 (2d Cir.) (citing *United States v. Claiborne,* 727 F.2d 842, 850 (9th Cir.), *cert. denied,* 469 U.S. 829, 105 S.Ct. 113, 83 L.Ed.2d 56 (1984)), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989). Hence, its application is guided by concerns of efficiency, and is not automatic. *See, e.g., Webb v. GAF Corp.,* 78 F.3d 53, 55 (2d Cir.1996) (district court is not divested of jurisdiction to grant a permanent injunction after an appeal from the district court's order granting a preliminary injunction); *Salerno,* 868 F.2d at 539–40 (frivolous appeal from district court order denying defendant's motion to dismiss based on double jeopardy does not displace district court jurisdiction to proceed to trial).

Whatever the superficial attractiveness of per se rule that filing a notice of appeal automatically divests the district court of jurisdiction as to matters covered by the notice, such a rule is subject to abuse, and our application of the divestiture rule must be faithful to the principle of judicial economy from which it springs.

*Id.* at 251; *see Leonhard v. United States,* 633 F.2d 599, 610 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981).

Ordinarily the filing of a notice of appeal, such as the one filed by CCI, would divest this Court of jurisdiction over this case. However, in the Court's view, the defendant's notice of appeal falls into the exception outlined above. CCI appeals from the Court's April 11, 1997 memorandum of decision and order denying its summary judgment motion and the granting Savino's motion for partial summary judgment. This decision was not final, and therefore not immediately appealable. *See Whalen v. County of Fulton,* 19 F.3d 828, 830 (2d Cir.1994), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 722, 130 L.Ed.2d 627 (1995) (denial of summary judgment is not appealable); *Acha v. Beame,* 570 F.2d 57, 62 (2d Cir.1978) (award of partial summary judgment is not a final order). As a result, the Court believes that deferring the plaintiff's class certification motion until

the case is reviewed by the Second Circuit, if it is reviewed, will only serve to delay these proceedings. Accordingly, in an effort to remain faithful to the principle of judicial economy underlying the "divestiture rule," the Court finds that it has jurisdiction to decide the plaintiff's motion for class certification.

### B. *The standard guiding Rule 23 motions*

Federal Rule of Civil Procedure 23, governing class certification, specifies that:

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Once these criteria have been satisfied, a class will be certified if it meets one of the following additional conditions imposed by Fed.R.Civ.P. 23(b): (1) separate actions would create a risk of inconsistent adjudications; (2) injunctive or declaratory relief is sought; or (3) common questions predominate over the individual questions and a class action is superior to other methods of bringing the suit.

Before beginning the analysis, the Court recognizes that on a motion for class certification, the plaintiff has the burden to demonstrate compliance with Rule 23's requirements and the Court should accept as true the plaintiff's allegations concerning the merits of the case. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974) (Rule 23 does not "give a court authority to conduct a preliminary inquiry into the merits of a suit to determine whether it may be maintained as a class action"); *Adames v. Mitsubishi Bank, Ltd.,* 133 F.R.D. 82, 87–88 n. 1 (E.D.N.Y. 1989). However, the Court's determination of class certification motion may involve some considerations related to the factual and legal issues that comprise the plaintiff's cause of

action. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). Further, Rule 23 should be given "broad, rather than restrictive, interpretation" by the Court, *Adames,* 133 F.R.D. at 88, "to favor maintenance of class actions." *King v. Kansas City Southern Indus.,* 519 F.2d 20, 26 (7th Cir.1975). While the Second Circuit has liberally construed Rule 23, *Gary Plastic Packaging Corp. v. Merrill Lynch,* 903 F.2d 176, 179 (2d Cir.1990), *cert denied,* 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991), citing, *Green v. Wolf Corp.,* 406 F.2d 291, 298 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969), trial courts have broad discretion in determining whether to certify a class. *See City of New York v. Int'l Pipe & Ceramics Corp.,* 410 F.2d 295, 300 (2d Cir.1969). It is also a prerequisite that a class be so defined as to permit a judge to ascertain whether an individual is a member. *Green,* 406 F.2d at 298.

It is within this framework that the Court addresses the present motion to certify this lawsuit as a class action.

### C. *Savino's motion for class certification*

#### 1. *Numerousity; Rule 23(a)(1)*

Numerosity exists when the joinder of all class member is impracticable. *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993). However, "[i]mpracticable does not mean impossible." *Id.* Impracticability exists where individual adjudication would take an extended period of time and joinder of all the claims would be expensive, time consuming and drastically increase the legal expenses for all the parties. *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 289 (2d Cir.1992).

Factors to be considered when determining whether a class is too numerous for practical joinder, include the inconvenience of trying individual suits, the geographic dispersion of class members, the financial resources of class members, the ability of claimants to maintain individual suits, and requests for prospective injunctive relief that would involve future class members. *See Robidoux,* 987 F.2d at 936. The Second Circuit has recognized that "nu-

merosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.), *cert. denied,* 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995), *citing,* 1 Newberg on Class Actions (2d ed.1985) § 3.05.

■ Applying these standards, the Court has little difficulty finding numerousity sufficient to warrant class certification. According to the moving papers, over 300,000 individuals were contacted by CCI with form letters which the Court has already determined to be violative of the FDCPA. The defendant does not dispute this estimate. Accordingly, the requirements of Rule 23(a)(1) are satisfied.

### 2. *Common questions of law or fact; Rule 23(a)(2)*

■ The second requirement for class certification is that the plaintiffs show that their claims share common questions of law or fact. *See* Fed. P. Civ. P. 23(a)(2); *Drexel, Burnham,* 960 F.2d at 290–91. "Rule 23(a)(2) requires only that questions of law or fact be shared by the prospective class. It does not require that *all* questions of law or fact raised be common." *Halford v. Goodyear Tire & Rubber Co.,* 161 F.R.D. 13, 18 (W.D.N.Y.1995), citing, *Dura–Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 93 (S.D.N.Y.1981) (emphasis in original); 1 Newberg on Class Actions at § 3.10 (3d ed.1992). The standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative—that is, there need only be a single issue common to all members of the class. *See Port Authority Police Benevolent Ass'n v. Port Authority of N.Y. & N.J.,* 698 F.2d 150, 153–54 (2d Cir.1983) (common question of free speech overrode individual questions concerning each class member); *Newberg,* at § 3.10. The critical inquiry is whether the common questions lay at the "core" of the cause of action alleged. *See Halford,* 161 F.R.D. at 18.

As this Court recognized in its decision in *Labbate–D'Alauro v. GC Serv. Ltd. Partnership,* 168 F.R.D. 451, 456 (E.D.N.Y.1996), in cases where FDCPA plaintiffs have received similar debt collection letters from the defendants' mailing as the basis of the lawsuit,

courts have found common questions of law or fact sufficient to certify the class. *See, e.g., Avila v. Van Ru Credit Corp.,* 1995 WL 41425, at *11 (certifying class where all members received at least one letter in common); *Colbert v. Trans Union Corp.,* 1995 WL 20821, at *2 (E.D.Pa. Jan.12, 1995) (certifying the class where all members received similar debt collection letters). The claims of individual class members do not have to match precisely. *Adames,* 133 F.R.D. at 90. Further, where the question of law involves "standardized conduct of the defendant ... [to the plaintiff], a common nucleus of operative fact is typically presented and the commonality requirement ... is usually met." *See Franklin v. City of Chicago,* 102 F.R.D. 944, 949 (N.D.Ill.1984).

■ Applying this standard, the Court finds that Savino has shown sufficient common questions of law and fact to merit class certification. The legal issue central to this case is whether the language contained in the first letter sent to the plaintiff, dated August 14, 1995, violated the FDCPA, 15 U.S.C. § 1692g. The Court answered this question in the affirmative in its April 11, 1997 memorandum decision and, as a result, granted the plaintiff's motion for partial summary judgment with respect to liability. The defining common characteristic of class members is that they were sent similar letters. The only individual issues may involve identification of class members and determination of their injuries and damages. In the Court's view, the common issues are sufficient to satisfy the requirements of Rule 23(a)(2).

### 3. *Typicality; Rule 23(a)(3)*

■ Rule 23(a)(3), requiring that the named plaintiff's claim be typical of the class, is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux,* 987 F.2d at 936, citing, *Drexel Burnham,* 960 F.2d at 291; *In re Alcoholic Beverages Litig.,* 95 F.R.D. 321, 324 (E.D.N.Y.1982). When the same "unlawful conduct was directed at both the named plaintiff and the class to be represented, the typicality requirement is usually met irre-

spective of varying fact patterns which underlie individual claims." 1 Newberg at § 3.13; *see Dura–Bilt Corp.,* 89 F.R.D. at 99.

■■■ Savino's claims are sufficient to satisfy the requirements of Rule 23(a)(3). As set forth above, the essential component with respect to liability in the Savino and the other class member's claims is that he or she received a collection letter from the defendant containing language similar to that contained in the August 14, 1995 letter which "overshadowed or contradicted" the FDCPA's 30 day debt validation notice requirement, advising the consumer that he or she has 30 days in which to contest the alleged obligation. Accordingly, the Court finds that the plaintiff has satisfied the typicality requirement of Rule 23(a)(3).

In reaching this conclusion, the Court is mindful of CCI's argument that Savino is an inappropriate class representative because at trial he will be subject to certain defenses that most other class members would not as the result of the inconsistent positions he has maintained throughout this litigation with respect to his receipt of the letters. Although this issue could be addressed during the typicality analysis, the Court believes that this argument is better considered in the context of the adequate class representation issue. *See General Telephone Co. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982) (recognizing that the typicality, commonality and adequate representation requirements "tend to merge"); *Welling v. Alexy,* 155 F.R.D. 654, 657–58 (N.D.Cal.1994) ("courts frequently discuss the adequacy and typicality prerequisites interchangeably").

4. *Adequacy of representation; Rule 23(a)(4)*

■■■ The focus of the defendant's opposition to Savino's motion for class certification is that neither he, nor his attorney, are able to adequately represent the putative class. The rule states that "the representative parties will fairly and adequately, protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Under Rule 2 3(a)(4), adequacy of representation is measured by two standards. First, class counsel must be qualified,

experienced and generally able to conduct the litigation. *In re Joint Eastern & Southern Dist. Asbestos Litigation,* 78 F.3d 764, 778 (2d Cir.1996); *In re Frontier Ins. Group, Inc. Securities Litigation,* 172 F.R.D. 31 (E.D.N.Y.1997); *Halford,* 161 F.R.D. at 19. At least one commentator has recognized that "the single most important factor considered by courts in determining the quality of the representatives' ability and willingness to advocate the cause of the class has been the caliber of the plaintiff's attorney." Symposium on Class Actions, *The Class Representative, the Problem of the Absent Plaintiffs,* 68 Nw. L.Rev. 1133, 1136 (1974); *see* Newberg, § 3.24 n. 353. Competence of class counsel includes not only reputation built upon past practice, but also past performance in the present litigation. *Frontier Ins. Group,* 172 F.R.D. at 44–45, citing, *Ballan v. Upjohn,* 159 F.R.D. 473, 487 (W.D.Mich. 1994).

■■■ The second requirement of the adequate representative test is that the class members must not have interests that are antagonistic to one another. *Drexel,* 960 F.2d at 291; *see County of Suffolk v. Long Island Lighting Co.,* 710 F.Supp. 1407, 1413 (E.D.N.Y.1989), *aff'd,* 907 F.2d 1295 (2d Cir. 1990). The speculative suggestion of potential conflicts however, will not be sufficient to defeat class certification. *Gruby v. Brady,* 838 F.Supp. 820, 827 (S.D.N.Y.1993), citing, *Breedlove v. Tele–Trip Co.,* No. 91 C 55702, 1993 WL 284327 at *7 (N.D.Ill. July 27, 1993). When engaging in this analysis, courts are free to consider the honesty and trustworthiness of the named plaintiff when determining his or her suitability as a class representative. *Kline v. Wolf,* 702 F.2d 400, 402–03 (2d Cir.1983) (class representation may be inadequate where the named plaintiff's credibility is in "serious question"); *Darvin v. International Harvester,* 610 F.Supp. 255, 257 (S.D.N.Y.1985) (credibility problems as demonstrated from deposition testimony render plaintiff inappropriate class representative); *Cohen v. Laiti,* 98 F.R.D. 581, 584 (E.D.N.Y.1983) (Platt, J.) (class certification denied based on plaintiff's deposition testimony rendering him subject to at-

tack); *Kaplan v. Pomerantz*, 132 F.R.D. 504, 509 (N.D.Ill.1990) (Rovner, J.).

■ Although the courts typically consider the adequacy of the named plaintiff and counsel separately, in this case the overlap as to these two factors warrants treating them together. As stated above, the central argument in the CCI's opposition papers is based on Savino's repeated reversals of his position with respect to whether he ever received the August 14, 1995 letter, which is the basis for the defendant's liability. This is the chronology with regard to this bizarre matter:

In his original complaint dated October 25, 1995, Savino alleges that he

received a letter from the Defendant dated August 28, 1995 for the purpose of collecting an alleged debt of $153.00 incurred by Savino with North Shore Hospital. This was the first and only letter Plaintiff Savino ever received from the Defendant with respect to the alleged debt.

Compl. ¶ 8 (emphasis in original). By letter dated November 17, 1995, the plaintiff was informed by CCI's prior counsel that the August 28, 1995 letter was the second in a two letter series, and that the first letter was sent on August 14, 1995. *See* Affidavit of Robert Dougherty, Apr. 25, 1997 ("Dougherty Aff."), Exh. A. According to the defendant, Savino nevertheless continued to maintain that he never received the August 14, 1995 letter. By letter dated March 28, 1996, CCI's counsel advised the plaintiff's attorney that the August 14, 1995 letter was mailed in the regular course of business, and, as a result, the defendant is entitled to invoke a presumption that the letter was received. *See* Dougherty Aff., Exh. B.

By letter application dated June 30, 1996, without the consent of his adversary, the plaintiff attempted to obtain leave to file an amended complaint pursuant to Fed.R.Civ.P. 15. The Court denied this application, advising the plaintiff that such an application must be made by formal motion.

As a result, on September 18, 1996, Savino filed a formal motion for leave to file an amended complaint. As stated above, the motion was referred to Magistrate Judge Lindsay. By order dated November 7, 1996,

Judge Lindsay granted Savino's motion and the plaintiff's amended complaint was filed. Paragraph 7 of the amended complaint is similar to Paragraph 8 of the original complaint, alleging that the August 28, 1995 letter was the first one received by Savino. However, the amended complaint further alleges:

Upon information and belief, CCI mailed an earlier letter to Savino, dated August 14, 1995, which was the first communication by CCI to Savino, or, at least, CCI's first letter to Savino.

Am. Compl. ¶ 10. In the Court's view, this amendment was appropriate, reflecting the fact that plaintiff's counsel obtained new information after the commencement of the lawsuit, namely that an initial letter dated August 14, 1995 was mailed to Savino in addition to the August 28, 1995 letter.

At the plaintiff's deposition on February 20, 1997 however, during the following colloquy, and contrary to his prior representations, Savino admitted that he did receive the August 14, 1995 letter:

Mr. Dougherty [Defense Counsel]:
Turning to the subject of the lawsuit that you filed against Computer Credit, Inc., I am going to show you a letter dated August 14, 1995—

\* \* \* \* \* \*

Have you reviewed it?
Plaintiff:
Yes.
Q Have you seen this document before or a copy of it?
A I believe, yes.
Q When was the first time you saw it?
A Approximately—what I can remember— around, about August 25th, approximately.
Q August twenty-fifth?
A Approximately.
Q Of 1995.
MS. PAOLUCCI [Plaintiff's Counsel]: I would like to note for the record that my client is trying to come up with a date.
Q I don't want any assumptions. I want your recollection?

A I can't give you a definitive.

MS. PAOLUCCI: To clarify your answer, is it whenever you received it in the mail?

MR. DOUGHERTY: I don't want: any clarifications. This is a critical point.

Q Did you receive a copy of this letter through the mail, at your home at 151 Woodbury Road, Hauppauge?

A I believe I did.

Q Approximately when did you receive this letter?

MS. PAOLUCCI: Objection. Asked and answered.

Q Is your answer, approximately August 25, 1995?

A I don't know.

MS. KRAVETZ [Plaintiff's Counsel]: Objection. Leading the witness. He's already stated that he does not know.

Q What, if anything, did you do upon receipt of this August 14, 1995 letter from CCI addressed to you?

A I believe I read it.

\* \* \* \* \* \*

Q Is it fair to say that in your prior testimony that you believe that you received an August 14, 1995 letter from CCI addressed to you?

A Yes, I believe, yes.

\* \* \* \* \* \*

Q Any statement that you did not receive the August 14, 1995 letter from CCI would be false according, to your recollection, your best recollection?

A Yes.

Deposition of Frank Savino, Feb. 20, 1997, Dougherty Aff. Exh. E ("Savino Dep.") at 10–12, 30–31.

On February 21, 1997, Judge Lindsay granted the plaintiff leave to file a second amended complaint, in which, contrary to the prior pleadings, the plaintiff alleges:

7. Plaintiff Savino received a letter from the Defendant dated August 14, 1995 for the purpose of collecting an alleged debt of $153.00 incurred by Savino with North Shore Hospital. This was the *first* letter Plaintiff Savino received from the Defendant with respect to the alleged debt. . . .

8. While Savino, initially, did not recall receiving the letter, he has accepted CCI's repeated representations that such a letter was, in fact, sent, and, as well, admits that he is presumed to have received the letter as a matter of law.

Sec. Am. Compl. ¶¶ 7–8 (emphasis in original). The Court further notes that at his deposition the plaintiff testified that he believed that he received the August 14, 1995 letter, and in the second amended complaint he states that he accepts CCI's representation that the letter was sent, a somewhat inconsistent position.

In his reply papers, both Savino and his attorneys respond to CCI's accusations regarding the veracity of the plaintiff's deposition testimony admitting to receipt of the August 14, 1995 letter, as opposed to his prior pleadings denying receipt of this letter, as "scandalous." Affidavit of Frank Savino, May 6, 1997 ("Savino Aff.") ¶ 2; Affirmation of Scott N. Gelfand, May 9, 1997 ("Gelfand Aff.") ¶ 1. According to his reply papers, Savino has "*always* maintained that [he does] not recall receiving the August 14, 1995 letter." Savino Aff. ¶ 3. The Court notes however, that, as stated above, when asked if he received the August 14, 1995 letter, in his deposition testimony the plaintiff responded:

Q Have you seen this document [the August 14, 1995 letter] before or a copy of it?

A I believe, yes.

Q When was the first time you saw it?

A Approximately—what I can remember— around, about August 25th, approximately.

\* \* \* \* \* \*

Q Did you receive a copy of this letter through the mail, at your home at 151 Woodbury Road, Hauppauge?

A I believe I did.

\* \* \* \* \* \*

Q What, if anything, did you do upon receipt of this August 14, 1995 letter from CCI addressed to you?

A I believe I read it.

Savino Dep. at 10–12.

In an effort to explain his deposition testimony in which he testified under oath that he saw the August 14, 1995 letter on August 25, 1995, and "believes" he read the letter, the plaintiff states that he was confused both as the result of defense counsel's abusive tone, Savino Aff. at ¶¶ 57–58, and because prior to his deposition, his attorney had explained to him that he was "presumed" to have "received the [August 14, 1995] letter under the law." *Id.* at ¶¶ 6, 8; *see* Gelfand Aff. ¶ 8. Accordingly, consistent with this belief, in addition to stating at his deposition that he had received the August 14, 1995 letter, when asked about certain papers submitted to the Court regarding his receipt of the letter, he responded:

A I presume I got the letter.

Q   You believe that you got the letter?

A I believe I said before, I presume, I believe.

Savino Dep. at 29.

In addition, the plaintiff made several corrections to his deposition testimony. For example, where he originally testified that "I think I received the letter," the plaintiff changed the answer to "I presume I received the letter." Ltr. Robert Dougherty to Ct., May 15, 1997, Exh. A. Further, Savino changed a second quote from "I believe at some point I received the first letter" to "I presume at some point I received the first letter." *Id.* A third correction demonstrates that the plaintiff modified a statement initially recorded as "I believe [I received the letter] I said before, I presume, I believe" to "I believe I said before, I presume, I believe under the law." *Id.* He further explains that although he did not receive the August 14, 1995 letter, he estimated that he received that letter on August 25, 1995 because he assumed that this letter would have taken a week to arrive after it was mailed. Savino Aff. ¶ 48. He also explains that at his deposition that he. stated that he read the letter because he was presumed to have received it. The similar admission contained in the second amended complaint is also a reflection of this assumption. *Id.* ¶ 43.

Having reviewed both the plaintiff's original and amended pleadings, his deposition testimony, and his explanations for the inconsistency in his various versions of the facts of this case, the Court, in the exercise of its discretion, determines that neither Savino nor his attorney will "fairly and adequately protect the interests of the class." Although it is difficult to determine whether Savino, or his counsel, or both, are responsible for the inconsistencies outlined above, the result is clear, neither the plaintiff, nor his attorney meet the requirements of Rule 23(a)(4) "to fairly and adequately protect the interests of the class."

The initial and the first amended complaints, as well as other correspondence, which were drafted by counsel, allege that the plaintiff never received the August 14, 1995 letter. The second amended complaint, which was filed on February 27, 1997, states that Savino did receive the August 14, 1995 letter. This modification occurred only after the plaintiff made the admissions discussed above, at his deposition. Then, in his reply papers in support of his motion for class certification, Savino apparently changes his version once again, reverting to his original position that he never received the August 14, 1995 letter.

The only explanation the plaintiff offers for these changes of position is that he was confused by his attorney's explanation with regard to the legal presumption as to the mailing of the August 14, 1995 letter. The Court is concerned about this flip-flopping in the plaintiff's sworn testimony with regard to the crucial material facts in this case. I addition, the Court is troubled by the sworn testimony Savino that he believed he read the August 14, 1995 letter. There is no explanation of the following testimony:

Q   What, if anything, did you do upon receipt this August 14, 1995 letter from CCI addressed to you?

A I believe I read it.

Savino Dep. at 12.   As stated in *Kline:*

Although a court must be wary of a defendant's efforts to defeat representation of a class grounds of inadequacy when the effect may be to eliminate any class repre-

sentation, *see Umbriac v. American Snacks, Inc.*, 388 F.Supp. 265, 275 (E.D.Pa. 1975), Judge Weinfeld's findings were fully supported by evidence and his denial of representation was proper. Plaintiff Block testified that he had relied upon a report which he now admits did not exist at the time he allegedly relied upon it. *Even if this testimony was the product of an innocent mistake, it subjects Block's credibility to serious question.*

*Kline*, 702 F.2d at 402–03, citing, *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549–50, 69 S.Ct. 1221, 1227–28, 93 L.Ed. 1528 (1949) (class representative is a fiduciary, and interests of the class are "dependent upon his diligence, wisdom and integrity") (emphasis supplied). Accordingly, based on the totality of this litigation as set forth above, the Court finds that the plaintiff has failed to establish that he or his attorney would "fairly and adequately protect the interests of the class" under Rule 23(a)(4), and his motion for class certification is denied.

In reaching this conclusion, the Court notes Savino's argument that as a general matter, inconsistent deposition testimony in and of itself will not serve as a ground for denial of class certification. *See, e.g., Gilbert v. First Alert, Inc.*, 904 F.Supp. 714, 720–21 (N.D.Ill.1995) (reasonable explanation of deposition testimony, such as "faulty recollection" is sufficient to defeat argument against class certification); *Randle v. Spectran*, 129 F.R.D. 386, 392 (D.Mass.1988) (refusing to apply a single instance of questionable testimony to preclude class representation); *Fickinger v. C.I. Planning Corp.*, 103 F.R.D. 529, 533 (E.D.Pa.1984) (holding that false testimony resulting from faulty memory will not operate as a bar to serving as a class representative). In an effort to synthesize these cases with *Kline* and its progeny, cited above, the Court looks to *German v. Federal Home Loan Mortgage Corp.*, 168 F.R.D. 145 (S.D.N.Y.1996), which recognized:

> To defeat class representation, any allegations concerning the representative's adequacy must be relevant to the claims in the litigation, such that the problems "could become the focus of cross-examination and unique defenses at trial, to the detriment of the class." *Darvin v. International Harvester*, 610 F.Supp. 255, 257 (S.D.N.Y.1985). Plaintiffs' testimony or credibility that is subject to attack must be "on an issue critical to one of their ... causes of action." *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir.1983). In sum, any contention that Plaintiffs cannot be adequate representatives of all class members "requires a finding that some *relevant* criterion separates the party from the group" *Ste. Marie v. Eastern R.R. Ass'n*, 72 F.R.D. 443, 449 (S.D.N.Y.1976).

*Id.* at 154 (emphasis in original).

Applying this standard, the Court finds that the inconsistencies in Savino's pleadings and deposition testimony with regard to the letter that is the sole basis for the plaintiff's liability claim, does go to the heart of the material issues in this case. In its prior decision, the Court determined that the August 14, 1995 letter violated the requirements of the FDCPA. Accordingly, the one major issue remaining is who is entitled to damages as a result of this violation. At first blush, this task seems rather straightforward. However, Savino's allegations depict an anomalous situation where, at least according to his latest version of the facts, he admits the letter was sent to him, but he never received it. Thus, calculation of his actual injury as a result of receiving the letter may be speculative. When the Court considers this problem together with the fact that, with reasonable certainty, his testimony will be subject to rigorous cross-examination based on his prior contradictory admissions under oath, the Court finds that Savino would be an inappropriate class representative. *See Gary*, 903 F.2d at 180 ("class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation").

Finally, the Court notes that the defendant also argues against class certification based on the plaintiff's counsel's failure to undertake adequate discovery and his inability to finance the expense of administering the class action. However, because Savino's motion is denied for the reasons set forth above, these arguments need not be addressed.

### III. *Conclusion*

Having reviewed the parties' submissions, and heard oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the plaintiff's motion for class certification is denied.

SO ORDERED.