Coleman MCCALL, Jr., individually and
on behalf of all others similarly
situated, Plaintiff,

v.

DRIVE FINANCIAL SERVICES, L.P.
and Drive G.P., LLC, Defendants.

No. 05–CV–2463.

United States District Court,
E.D. Pennsylvania.

June 19, 2006.

age, Godwin Pappas Langley Ronquillo, Dallas, TX, for Defendants.

## *EXPLANATION AND ORDER*

ANITA B. BRODY, District Judge.

Plaintiff Coleman McCall, Jr. brings this putative class action against Drive Financial Services, L.P. and Drive G.P., LLC (collectively, "Drive"). McCall alleges that Drive violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA") by having their collection department send out collection notices with false threats on purported lawyer letterhead. Before me is McCall's Motion for Class Certification (Doc. # 18).

McCall seeks to certify a class consisting of "(a) all persons with addresses in the Commonwealth of Pennsylvania (b) to whom letters were sent on the ostensible letterhead of Thomas Asturias, Attorney at Law in an attempt to collect on a debt (c) which were sent by Drive Financial, not Asturias (d) in an attempt to collect a debt incurred primarily for personal, family or household purposes (e) since May 25, 2004." (Mot. for Class Cert. at 1.) McCall argues that all of the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) for class certification have been met. Drive challenges plaintiff's adequacy as a class representative under Federal Rule of Civil Procedure 23(a)(4). For the reasons that follow, I find McCall to be an adequate class representative and certify the class.

## I. Factual Background[1]

McCall obtained an automobile loan through Drive in September, 2002. After making payments to Drive over the next two years, McCall fell behind in his payment in 2004. Drive sent McCall various billing statements and collection letters, and then on February 16, 2005 sent McCall a collection notice on the purported letterhead of "Thomas Asturias, Attorney at Law." The letter, which is the subject of McCall's complaint, asked McCall to call Mr. Asturias at a telephone number that belonged not to a law

Cary L. Flitter, Theodore E. Lorenz, Lundy Flitter Beldecos & Berger PC, Narberth, PA, for Plaintiff.

Andrew J. Soven, Reed Smith, LLP, Philadelphia, PA, Donald E. Godwin, Rob D. Ram-

---

1. At this stage of the litigation I assume the facts alleged in the plaintiff's complaint to be true.

The facts in this summary are taken from the complaint except where otherwise indicated.

firm but to the collection department at Drive. No office address or bar information for Mr. Asturias was provided in the letter. The collection notice was prepared by Drive, not Mr. Asturias, and sent to its customers demanding payment under the ostensible authority of an attorney.

The letter stated that Asturias "as legal counsel for Drive may pursue action against you to retrieve the vehicle through the appropriate Court." Asturias is not admitted to the Pennsylvania bar. The letter also stated that Asturias "as legal counsel for Drive, may seek a judgment against any non-exempt property you may own. Once judgment is rendered, [Asturias], where permitted by law, may also seek to garnish up to 25% of your current wages." In response to discovery requests, Drive President and Chief Operating Officer Thomas Dundon submitted an affidavit stating that, during the class period, Drive sent out 204 letters to Pennsylvania consumers containing the same content as the letter to McCall. (Mot. to Cert. Class Ex. D.)

McCall filed a consumer class action on May 25, 2005, claiming that the letter violated the FDCPA. McCall was deposed on December 5, 2005. At his deposition, McCall stated that he had been employed as a custodial worker with the City of Philadelphia for almost five years. (Tr. 12/5/05 at 17.) He knew that he was a designated class representative, representing a class of 204 people, "everyone that received a letter like [his] in the state of Pennsylvania." (*Id.* at 15, 26–27.) McCall described his responsibility as a representative as an obligation "to represent the class, to aid the lawyers in this case to the best of my ability, to make sure that the facts are true." (*Id.* at 26–27.) He said that he believed Drive's letter to him violated the law because it was sent by an attorney threatening to take his house, garnish his wages, come to his job, and sue him. (*Id.* at 31.)

McCall also admitted at his deposition that when he was twenty-three years old, he was convicted of robbing a convenience store in Bucks County. He was released in September 1996 after serving five years in prison. (*Id.* at 57–59.) McCall stated that he did not know the location of the store he robbed, the name of the store, how much money was involved, whether he was ordered to pay restitution to the victims, or whether there was a weapon involved in the robbery. (*Id.* at 58–62.) He stated that he did not believe he was ordered to pay restitution. (*Id.* at 59.) McCall said that he had never been arrested other than the robbery arrest in this case. (*Id.* at 61.)

In an effort to impeach McCall's testimony, Drive submitted records from the Philadelphia County Court of Common Pleas showing that McCall was arrested on March 18, 1991 and May 9, 1991. (Def.'s Opp. to Mot. to Cert. Class Ex. B.) Drive also submitted a copy of the trial court's Opinion on Post–Verdict Motions from the Bucks County Court of Common Pleas. (Def.'s Opp. to Mot. to Cert. Class Ex. C.) The Opinion states that at trial, it was established that McCall "pointed a hand gun at his victim in order to effectuate the robbery." (*Id.*) Finally, a printout of the docket of McCall's conviction from the Bucks County Public Access System reveals that McCall was directed to pay $1,203 in restitution to the robbery victims. (Def.'s Opp. to Mot. to Cert. Class Ex. D.)

After discovery in this case was completed, plaintiff filed a Motion for Class Certification on January 6, 2006. On March 22, 2006, the parties appeared before me for oral argument on the class certification motion.

## II. Discussion

To obtain certification, a class must satisfy the requirements of Federal Rule of Civil Procedure 23. Rule 23(a) sets forth four prerequisites to class certification:

(1) the class is so numerous that joinder is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These four requirements are referred to in the short-hand as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

Once the prerequisites of Rule 23(a) are met, plaintiffs must also show that the action is maintainable under one of the three provisions of Federal Rule of Civil Procedure 23(b). In this case, plaintiffs move for class certification under Rule 23(b)(3), which provides for certification when:

> the court finds that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[2]

Fed.R.Civ.P. 23(b)(3). Rule 23(b)(3)'s requirements are often referred to as "predominance" and "superiority." Plaintiffs bear the burden of showing that the prerequisites of Rule 23(a) and the requirements of 23(b)(3) are satisfied. Finally, plaintiffs counsel must be certified according to the requirements of Rule 23(g).

## A. Rule 23(a) Requirements[3]

### 1. Numerosity

■ Rule 23(a)(1) requires plaintiff to demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). This numerosity prerequisite does not require plaintiff to allege a certain number of class members, but only that the class be "so numerous that joinder of all members is impracticable." Fed. R.Civ.P. 23(a)(1). The Third Circuit has held that a class consisting of more than forty people generally satisfies the numerosity prerequisite. See Stewart v. Abraham, 275 F.3d 220, 227–28 (3d Cir.2001) ("Generally if the named plaintiff demonstrates that the

potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met"); see also Eisenberg v. Gagnon, 766 F.2d 770, 785–86 (3d Cir.1985)(allegation of 91 class members satisfies numerosity).

In this case, plaintiffs define the putative class as "all Pennsylvania residents to whom defendant sent one or more collection letters over the letterhead of Thomas Asturias, Attorney at Law in the form of, or substantially similar to [McCall's letter], within one year prior to the date of filing of [the] complaint." (Compl.¶ 23.) Drive has admitted that it sent 204 such letters to Pennsylvania residents. This number is well above the 40 plaintiffs held to be sufficient in Stewart, 275 F.3d at 227–28, or the 91 in Eisenberg, 766 F.2d at 785–86. The numerosity requirement of Rule 23(a)(1) is met.

### 2. Commonality

■ The commonality requirement of Rule 23(a)(2) demands the presence of questions of law or fact common to the class. Fed. R.Civ.P. 23(a)(2). Essentially, commonality "provides the necessary glue among class members to make adjudicating the case as a class worthwhile." Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 182 (3d Cir.2001) (quoting Herbert E. Newberg & Alba Conte, 1 Newberg on Class Actions, § 3.01, p. 3–4 (3d ed.1992)). The threshold for satisfying the commonality as well as the typicality prerequisites of Rule 23(a) is not high. See Newton, 259 F.3d at 183 ("We have set a low threshold for satisfying [the commonality and typicality] requirements"). The Third Circuit has held that the commonality requirement is not stringent, and that a single common issue of law or fact suffices. See Johnston v. HBO Film Management, Inc., 265 F.3d 178, 184 (3d Cir.

**2.** Fed.R.Civ.P 23(b)(3) also lists four factors to be considered in relation to the determination of whether the predominance and superiority requirements are satisfied:

> The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or unde-

> sirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

**3.** Although Drive does not dispute that the putative class meets Rule 23(a)'s first three requirements of numerosity, commonality and typicality, the court must be satisfied that the plaintiffs satisfy all four prerequisites of Rule 23(a).

2001); *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir.1994).

Here, there are common issues of both law and fact. The putative class consists of Pennsylvania residents who received a substantially identical form letter that plaintiffs claim violates the FDCPA, so the factual basis of the claim is common to all plaintiffs. In order to prevail on the claim, McCall will have to show that the letter was deceptive from the perspective of the least sophisticated consumer. *See Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir.1991). Therefore the legal issue is the same for all plaintiffs. The commonality requirement of Rule 23(a)(2) is met.

### 3. *Typicality*

■ The third prerequisite of Rule 23(a) is that the claims of the class representatives be "typical" of the claims of the remaining class members. Fed.R.Civ.P. 23(a)(3). The purpose of the typicality requirement is to ensure that the interests of the class representatives are aligned with those of the class as a whole. *See In re Prudential Ins. Co. of America Sales Practice Litig.*, 148 F.3d 283, 311 (3d Cir.1998). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Newton*, 259 F.3d at 184 (*quoting* 1 *Newberg on Class Actions* § 3.15, p. 3–78). *See also Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 631 (3d Cir.1996)(typicality is a bar to class certification "where the legal theories of the named representatives potentially conflict with those of the absentees"); *Baby Neal*, 43 F.3d at 58.

In this case, the facts of McCall's case are typical because he received essentially the same letter as the 203 other plaintiffs, and the alleged conduct of Drive is the same in each case. Again, McCall must show that the least sophisticated consumer would have been deceived by the letter. His legal theory, and his burden to prove it, are the same

as they would be for each member of the putative class. The typicality requirement of Rule 23(a)(3) is met.

### 4. *Adequacy of Representation*

■ Under Rule 23(a)(4), McCall must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). In the Third Circuit, there is a two-prong test to assess the adequacy of a proposed class representative. First the court must inquire into the "qualifications of counsel to represent the class," and second it must assess whether there are "conflicts of interest between named parties and the class they seek to represent." *In re Prudential Ins. Co. of America Sales Practice Litig.*, 148 F.3d 283, 312 (3d Cir.1998).

The first prong of the adequacy test is satisfied in this case. Proposed class counsel have submitted a certification in support of appointment of them and their law firm, listing their credentials and experience as class counsel. Drive does not challenge their qualifications,[4] and I find them competent to prosecute this action on behalf of the class.

The second prong is the one being challenged by Drive, which contests McCall's personal adequacy as a class representative. Under the *In re Prudential* test, his personal adequacy must be measured in terms of whether there is a conflict of interest between McCall and the other class members. Drive challenges McCall's adequacy to represent the class on three broad grounds: (1) that McCall testified falsely during his deposition and is a convicted felon; (2) that McCall is not familiar with the litigation and has not followed rules of court; and (3) that McCall is unfit to represent the class because he is confused about what damages are recoverable and his damages claims are antagonistic to the interests of absent classes. For the reasons that follow, I find that McCall is an adequate representative for the putative class under Rule 23(a)(4).

First I will address Drive's contention that McCall's allegedly false testimony and felony

---

**4.** Drive does not challenge the qualifications of Mr. Flitter, Mr. Lorenz, or Lundy, Flitter, Beldecos & Berger, P.C. directly. Insofar as Drive's third argument against adequacy, McCall's alleged misunderstanding of the available statutory damages, implicates proposed counsel's ability to understand the law, I reject this argument as explained in more detail *infra*.

conviction cause a conflict between McCall and the other class members. According to a leading commentator on class actions, most courts have rejected challenges to class representatives based on allegations of "unrelated unsavory, unethical, or even illegal conduct." 1 Alba Conte & Herbert Newberg, *Newberg on Class Actions,* § 3:36 (4th ed.2002) (collecting cases). This is "irrelevant to the issue of adequacy to represent a class for particular claims or issues."[5] *Id.* Here, McCall's criminal conviction and his testimony regarding it are irrelevant to his ability to represent the class vigorously and responsibly, and do not create any conflict of interest between McCall and the rest of the class.

McCall's fifteen-year-old robbery conviction is factually unrelated to his auto loan from Drive, and to Drive's alleged violation of the FDCPA. As Judge Pollak recently noted, the FDCPA only requires a named plaintiff "to show that the . . . letter is deceptive from the perspective of the least sophisticated consumer; she need not show that she was deceived, that she relied on the letter, or anything else about herself." *Seawell v. Universal Fidelity Corp.,* 235 F.R.D. 64, 66 (E.D.Pa.2006). McCall's personal history has no bearing on his ability to represent the class, because it provides Drive with no special defense or impeachment material[6] against McCall that could prejudice the class. Drive does not dispute that it sent McCall a letter, nor that it sent near-identical letters to 204 consumers in Pennsylvania over the relevant time period.[7]

The cases cited by Drive in support of finding that a criminal conviction renders a class representative inadequate are all distinguishable. They all involve proposed representatives whose criminal convictions provide ammunition the defendants could use in court to defeat their claim, thereby prejudicing absent class members. In these cases, the close relationship between the criminal conduct and the subject matter of the lawsuits cast doubt on whether the proposed representatives could vigorously prosecute the case on behalf of the entire class. *See Hall v. National Recovery Sys., Inc.,* No. 96–132–CIV–T–17(C), 1996 WL 467512, at *5 (M.D.Fla.1996) (rejected representative had been convicted of numerous crimes, including issuing worthless checks such as the one defendants had allegedly violated the FDCPA attempting to collect, had been "in and out of jail as well as unemployed for major periods of his adult life" and had three outstanding warrants for his arrest at the time); *Weisman v. Darneille,* 78 F.R.D. 669, 670–71 (S.D.N.Y.1978) (rejected representative had been convicted of violating the same statute he was suing under, and testified falsely about the earlier case); *Cobb v. Avon Prods., Inc.,* 71 F.R.D. 652, 654–55 (W.D.Pa. 1976) (representative inadequate because she had engaged in misconduct toward the same employer that she was suing in a discrimination suit); *Amswiss Int'l Corp. v. Heublein, Inc.,* 69 F.R.D. 663, 670 (N.D.Ga.1975) (rep-

---

**5.** The only exception to this general rule is that courts may find plaintiffs inadequate to represent the class if their past conduct indicates "that vigorous prosecution of the litigation on behalf of the class will not be fulfilled." *Id.* Here, McCall's past does not make him unable or unlikely to prosecute the litigation vigorously on behalf of the class he seeks to represent. He is a thirty-seven year old homeowner who lives with his fiancee and their daughter. (Tr. 12/5/05 at 12–15.) He is a high school graduate who attended some college classes and has been employed for almost five years as a custodial worker for the City of Philadelphia. (*Id.* at 15–17.)

**6.** It is doubtful that Drive could use McCall's conviction at trial to impeach him. Under Rule 609, "if a period of more than ten years have elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date," evidence of the conviction is not admissible. Fed.R.Evid. 609(b). The record indicates that McCall was released from prison in September 1996. (Tr. 12/5/05 at 58.) By the time this case goes to trial, more than ten years will have passed since McCall was released.

**7.** In *Seawell,* Judge Pollak explicitly declined the defendant's "invitation to examine [the putative named plaintiff's] credibility in deciding this class certification motion." *Id.* Credibility is similarly irrelevant in this case, where the dispute between plaintiffs and defendants is legal, not factual. Drive admits that it sent the letters, but argues that they did not violate the FDCPA. Any factual dispute in this case would relate to the production of the letters at Drive's offices, and the involvement of Mr. Asturias with the collection department, facts to which Mr. McCall would not testify in any case.

resentative inadequate because he had engaged in financial misconduct related to the purported class action, and his testimony was essential to proving the class's case at trial). In each of these cases, the alleged criminal or unethical behavior that rendered the class representatives inadequate was relevant to the class action at hand, and in some cases was ongoing at the time of the suit. These proposed representatives' own claims were susceptible to attacks by the defendants because of their criminal histories and other misconduct. If the jury found their testimony incredible, they could lose the case for all class members, creating a clear conflict. In the present case, a fifteen year old robbery is not relevant to a class action under the FDCPA, and does not give rise to a conflict of interest between McCall and the other class members.

■ Drive attaches several documents to its opposition to class certification to support its argument that McCall did not testify truthfully at his deposition, to prove that McCall will prejudice the class by bringing this action on their behalf.[8] Plaintiffs note that defense counsel did not introduce the documents at McCall's deposition, to refresh his recollection or for any other purpose. (Pl.'s Reply at 7, n. 2.) McCall therefore did not have an opportunity to explain or correct any discrepancies between his testimony and the documents. Also, the alleged discrepancies all concern a fifteen year old conviction that is not in any way related to the facts of this case. Drive is unable to explain how these discrepancies create a conflict of interest between McCall and the other class members.

Drive cites several cases where the court found proposed class representatives inadequate because of concerns about dishonesty or credibility that cast doubt on their ability to represent the class free of conflicts of interest. These cases are not persuasive in the motion before me because they all involve representatives who were dishonest or lacked candor about matters central to the litigation itself. *See Kline v. Wolf,* 702 F.2d 400, 401–402 (2d Cir.1983) (named plaintiffs were inadequate because they testified falsely about the circumstances of the investments at issue in their Securities Exchange Act lawsuits)[9]; *Darvin v. Int'l Harvester Co.,* 610 F.Supp. 255, 257 (S.D.N.Y.1985) (same); *Brider v. Nationwide Credit Inc.,* No. 97–C3830, 1998 WL 729747 at *3–4 (N.D.Ill. Oct.14, 1998) (plaintiff disqualified in an FDCPA action where creditor claimed to have attempted to contact plaintiff by telephone and the plaintiff lied about having a telephone). In each case cited by Drive, the disqualified representative's incredible deposition testimony had a direct bearing on the case before the court, possibly adversely affecting the case for all plaintiffs because the proposed representatives' false testimony could "support a rebuttal unavailable against many other class members." *Kline,* 702 F.2d at 403. In this case, McCall's testimony about his prior conviction has no bearing on the case and will not jeopardize the claims of the rest of the class.

As a second aspect of the conflict of interest prong of the adequacy test, Drive challenges McCall's appropriateness as a class representative because of his alleged lack of understanding of the case and compliance with the rules of litigation. This challenge is also without merit. McCall testified at his deposition that the putative class consists of "everyone that received a letter like mine in the State of Pennsylvania." (Tr. 12/5/05 at 26.) He described his obligation as a class representative as "to represent the class, to

---

8. Drive attached court history printouts allegedly from the Philadelphia Court of Common Pleas showing Jerome Wilson arrested on March 18, 1991 and May 9, 1991 (Ex. B to Def.'s Opp.); the post-trial opinion of the Court of Common Pleas of Bucks County in *Commonwealth of Pennsylvania v. Coleman McCall,* No. 3330–01/1991 (Mar. 13, 1992) (J. Garb) and related charging documents (Ex. C); and a printed docket from the Bucks County website in the same case, No. 199103330 (Ex. D).

9. Drive also cites *Cohen v. Laiti,* 98 F.R.D. 581, 584 (E.D.N.Y.1983). The court in *Cohen* found that "the facts of this case are closely analogous to *Kline v. Wolf*" and also held the plaintiff inadequate because his deposition testimony claimed that he relied in his stock purchases on documents published after he purchased the stock. His reliance in purchasing the stock was central to his case under the Securities Exchange Act.

aid the lawyers in this case to the best of my ability, to make sure that the facts are true." (*Id.* at 26–27.) He was aware of Drive's discovery responses stating that there were 204 class members. (*Id.* at 27.) When asked to describe his claim, McCall stated that an attorney sent a letter threatening to take his house, garnish his wages, come to his job, and sue him. (*Id.* at 31.) McCall participated in the class discovery process by helping his lawyers respond to Drive's discovery requests, and by preparing for and appearing at his deposition. (*Id.* at 7–13.) McCall's actions and understanding of the case show him to be an adequate representative.

■ Drive faults McCall for not knowing the name of the judge (that is, my name) or whether the case had a trial date, for believing that a class certification motion had been filed before it had, and for not knowing about a mediation scheduled for the week after his deposition. (Def.'s Opp. to Mot. to Cert. Class at 9–12). The adequacy of putative class representatives does not depend on their legal knowledge, nor are they required to know all the facts about the class as a whole. *Mueller v. CBS, Inc.,* 200 F.R.D. 227, 238 (W.D.Pa.2001) (citing *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 366, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966)). In *Surowitz,* the Supreme Court reversed a dismissal of class claims where the representative was relatively uneducated, did not understand the complaint, and knew little about the lawsuit. *Surowitz,* 383 U.S. at 366, 86 S.Ct. 845. McCall has shown sufficient knowledge about the case to be an adequate representative, capable of prosecuting the case vigorously. His confusion about some aspects of the case does not create a conflict to render him inadequate under Rule 23(a)(4).

As a third aspect of the conflict of interest prong, Drive challenges McCall's adequacy by arguing that his damages claims are antagonistic to the absent class and his confusion about recoverable damages renders him unfit to represent the class. The FDCPA provides for the recovery of statutory damages in § 1692k as follows:

(1) Any actual damage sustained by such person as a result of [defendant's failure to comply with the FDCPA]

(2)(A) In the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) In the case of a class action, (I) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.

15 U.S.C. § 1692k(a). It is McCall's position that the statute has one aggregate cap on damages of 1% of defendant's net worth up to $500,000. Drive argues that damages are capped at $1,000 per class member. Also, McCall reads the FDCPA to allow the named plaintiff to obtain a share of the class recovery and an individual recovery up to an additional $1,000, while Drive reads clause (B)(ii) to refer only to the recovery for unnamed class members, limiting the class representative to $1,000 total under (B)(I).

Drive argues that McCall's allegedly faulty understanding of the law will impede his ability to engage in productive settlement negotiations, creating a conflict with the rest of the class and making him an inadequate representative. McCall responded by filing a Motion in Limine to Determine Available Statutory Damages (Doc. # 21). Counsel for both parties argued their positions on statutory damages at oral argument on the class certification motion. Although I have not yet ruled on the Motion in Limine, I find both parties' statutory interpretations arguable, and do not find McCall an inadequate representative for holding a legal position different from Drive that, if successful, would maximize the recovery for his class.

In sum, McCall has proven that he satisfies both prongs of the adequacy test. His counsel is qualified to represent the class, and there are no conflicts of interest between him and the class he seeks to represent. *See In re Prudential Ins. Co. of America Sales Practice Litig.,* 148 F.3d at 312. Drive's objections based on McCall's credibility do

not impact his ability to represent the class, he has sufficient knowledge of and involvement in the lawsuit, and his position on available class damages is not such as to create a conflict of interest with the class. Therefore I find that the adequacy requirement of Rule 23(a)(4) has been met.

For the foregoing reasons, this action satisfies the numerosity, commonality, typicality and adequacy requirements of Rule 23(a).

## B. Rule 23(b) Requirements

In addition to satisfying the conditions of Rule 23(a), a plaintiff must demonstrate that the putative class meets the criteria of one of the three subsections of Rule 23(b). In this case, McCall asserts that the class should be certified under subsection (b)(3). In order to certify a class under subsection (b)(3), a plaintiff must demonstrate both that common questions of law and fact predominate over individual questions and that a class action is a superior device for resolution of the controversy to other available means.

■ The predominance test of Rule 23(b)(3) is significantly more demanding than the commonality requirement of Rule 23(a)(2). *Newton*, 259 F.3d at 187 (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Although the predominance requirement does not demand unanimity of common questions, it requires that common questions outweigh individual questions. *See Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 185 (3d Cir.2001). The purpose of the predominance requirement is to ensure that the proposed class is "sufficiently cohesive to warrant certification." *Newton*, 259 F.3d at 187.

Drive does not argue that the action fails to satisfy the predominance requirement. Indeed, as other courts in this district have noted, the factual and legal issues involved in a FDCPA class action based on a form letter are identical for all class members. *See Sea-*

*well*, 235 F.R.D. at 67; *Oslan v. Collection Bureau of Hudson Valley*, 206 F.R.D. 109, 111–12 (E.D.Pa.2002); *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 469 (E.D.Pa.2000); *Smith v. First Union Mortg. Corp.*, 1999 WL 509967 at *2 (E.D.Pa.1999). The question of whether the letter would have been deceiving to the least sophisticated consumer is common to the claims of all class members. I find this common issue to predominate over any individual issues.

■ To certify a class action, Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). *See Prudential*, 148 F.3d at 316. The court may consider "the difficulties likely to be encountered in the management of a class action." Fed. R.Civ.P. 23(b)(3)(D). *See Johnston*, 265 F.3d at 194. The Third Circuit has recently noted that the FDCPA specifically provides for class damages, and recognized that a class action is a benefit to claimants who can share the cost of litigation when their individual recovery is relatively small, as it is in this case.[10] *Weiss v. Regal Collections*, 385 F.3d 337, 344–45 (3d Cir.2004). The class is defined as 204 consumers in Pennsylvania who received Drive's letter, and neither party suggests any disadvantage in litigating in this forum. Also, neither party has suggested that there would be any difficulties in managing this case as a class action. Given these considerations, I find that a class action is a superior method of adjudicating the claims of McCall and the remainder of the putative class.

Because the proposed action satisfies the predominance and superiority requirements of Rule 23(b)(3), it is appropriate to certify it as a class action.

## C. Rule 23(g) Factors

In certifying the class, I must also appoint class counsel that will "fairly and adequately represent the interests of the class."[11] Fed.

---

10. Even under McCall's expansive read of the statutory damages provision of 15 U.S.C. § 1692k(a)(2), each of the 200 plaintiffs would be entitled to less than $2500. As individual plaintiffs, they could only recover $1000 each, not enough to pay a lawyer to litigate the claim.

11. In this case there were no contestants for appointment other than Mr. Flitter and his firm.

R.Civ.P. 23(g)(1)(B). Rule 23(g) requires me to consider four factors in appointing class counsel:

- the work counsel has done in identifying or investigating potential claims in the action,
- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
- counsel's knowledge of the applicable law, and
- the resources counsel will commit to representing the class.

Fed.R.Civ.P. 23(g)(1)(C)(I). The Certification of Cary L. Flitter demonstrates that Mr. Flitter and Mr. Lorenz concluded after investigation that the class in this case only has a claim under 15 U.S.C. § 1692; that they have handled many fair debt and other consumer class actions; that they has knowledge of the applicable law through (in Mr. Flitter's case) more than twenty-four years of practice and teaching; and they are prepared to commit resources to this case as necessary. The appointment of Mr. Flitter, Mr. Lorenz, and their firm as class counsel satisfies the requirements of Rule 23(g).

### III. Conclusion

For the foregoing reasons, the action satisfies the numerosity, commonality, typicality and adequacy requirements of Federal Rule of Civil Procedure 23(a), the predominance and superiority requirements of Rule 23(b)(3), and the class counsel requirements of Rule 23(g). I therefore certify McCall's case as a class action, and appoint his attorneys class counsel. An appropriate order follows.

#### ORDER

**AND NOW,** this 19th day of June, 2006, it is **ORDERED** that plaintiff's Motion for Class Certification (Doc. # 18) is **GRANTED.** I find that the class meets the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. This action is hereby certified as a class action pursuant to Fed.R.Civ.P. 23(a) and (b)(3), on behalf of the following class:

All persons with addresses in the Commonwealth of Pennsylvania to whom letters were sent by Drive Financial on the ostensible letterhead of Thomas Asturias, Attorney at Law, but were sent by Drive, not Asturias, in an attempt to collect a debt incurred primarily for personal, family or household purposes since May 25, 2004, which is the period one year prior to the filing of the Complaint in this action.

It is further **ORDERED** that plaintiff Coleman McCall, Jr. is hereby designated as the representative of the class. Cary L. Flitter, Theodore E. Lorenz, and the law firm of Lundy, Flitter, Beldecos & Berger, P.C. shall serve as class counsel.